[No. 15600.   In Bank.—January 6, 1895.]

## THE PEOPLE, RESPONDENT, v. CENTRAL PACIFIC RAILROAD COMPANY, APPELLANT.

TAXATION—ASSESSMENT OF RAILROADS—CONSTITUTIONAL LAW—SPECIAL LEGISLATION.—Sections 3668 to 3670 of the Political Code, which provide for the assessment and collection of taxes upon a certain class of railroads, are not unconstitutional as contravening the provisions of subdivision 10 of section 25 of article IV of the constitution, prohibiting the passage of a special law for the collecting of taxes.

ID.—GENERAL LAW—OPERATION UPON CLASSES OF INDIVIDUALS.—A law which operates only upon a class of individuals is none the less a general law if the individuals to whom it is applicable constitute a class which requires legislation peculiar to itself, in the matter covered by the general law, and which is germane to the purpose of the law.

ID.—RAILROADS OPERATED IN MORE THAN ONE COUNTY—CLASSIFICATION.—For the purpose of collecting delinquent taxes railroads operated in more than one county constitute a class distinct from all other railroads, as well as from all taxpayers, and the classification thereof for the purpose of assessment and collection of taxes is constitutional and valid.

ID.—TAXATION UPON RAILROAD FRANCHISE—STATE AND FEDERAL FRANCHISES—MERGER.—A railroad company organized under the laws of the state of California to construct and operate its railroad within the state, which has subsequently received from the United States a franchise to construct and operate a railroad from the Pacific ocean eastward, may be assessed upon its railroad franchise derived from the state, which is not merged in or destroyed by the franchise received from the federal government.

ID.—ASSESSMENT BY STATE BOARD OF EQUALIZATION—PRESUMPTION.—The assessment of a railroad franchise within the state properly susceptible of valuation by the state board of equalization must be presumed, in the absence of any other evidence than the assessment itself, to have been assessed upon property within the jurisdiction of the board, rather than upon property which it had no power to include in the assessment.

ID.—STATEMENT BY RAILROAD COMPANY—ESTOPPEL.—Where the railroad company furnished to the state board of equalization a statement signed by its secretary, in which it stated the value of its franchise and roadway within the state, it must be held that the franchise included in the statement was the one capable of assessment, and the railroad company ought not to be permitted to say that a federal franchise was intended by it, or was included in the assessment, but the statement is admissible in evidence to show that the assessment was made in accordance with the statement furnished by the railroad company at the request of the state board.

ID.—NONASSESSMENT OF FEDERAL FRANCHISE—CONFLICTING EVIDENCE—OPINION OF COURT—REVIEW UPON APPEAL.—Where the trial court has found as a fact, upon conflicting evidence, that no federal franchise was assessed by the state board of equalization, the fact that the court, after

giving its decision upon that issue, gave its opinion that from both the standpoints of fact and law the finding must be that the federal franchise was not included in the assessment, does not take the case out of the rule regarding the conclusiveness of a decision upon conflicting evidence, or constitute the ruling an error to be reviewed upon appeal.

ID.—EVIDENCE—CROSS-EXAMINATION OF WITNESS—LIMITATION OF TESTIMONY.—Where, upon the cross-examination of a witness, the court states that the evidence must be confined to the year during which the assessment in controversy was made, there is no error in confining the examination to that year in the absence of a specific offer of other evidence, or the presenting of a question for the ruling of the court relating to other assessments.

ID.—CONVERSATIONS BETWEEN MEMBERS OF STATE BOARD—MEANING OF ASSESSMENT.—Conversations between the members of the state board of equalization during the session in which the assessment was made are not admissible to show the intention of the board, or of any of its members, or the signification to be given to the term "franchise" used in the assessment made by the board.

ID.—IMPEACHMENT—FOUNDATION NOT LAID.—Evidence as to the conversations of the members of the state board of equalization cannot be used for the purpose of impeaching the members of the board, unless they have been previously questioned thereon.

ID.—INTEREST ON TAXES.—Interest cannot ordinarily be allowed on the amount of unpaid taxes, the five per cent added to the principal sum being the only penalty given by the statute.

ID.—INTEREST ON TAXES STATUTORY.—Taxes do not bear interest unless it is specially given by statute; and the provision in section 3803 for interest on certain classes of taxes is indicative of intention on the part of the legislature to exclude all other classes.

ID.—CONSTRUCTION OF CODE—TAX HAVING EFFECT OF JUDGMENT.—The provisions of section 3716 of the Political Code, which declares that every tax has the effect of a judgment against the person, cannot be construed as giving it the effect of bearing interest.

ID.—INTEREST UPON JUDGMENT FOR TAXES.—It is proper to provide in a judgment for taxes that it shall bear interest from the date of its entry, like any other judgment.

ID.—COUNSEL FOR CONTROLLER—ASSISTANT TO ATTORNEY GENERAL.—In an action for the collection of delinquent taxes due to the state the court is authorized to include in the assessment such sum for fees of counsel employed by the controller as may be determined to be reasonable and just; but no allowance can be made for counsel fees of an assistant counsel engaged by the attorney general.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.

The facts are stated in the opinion of the court.

*William F. Herrin, H. S. Brown, J. E. Foulds,* and *Foshay Walker,* for Appellant.

CV. CAL.—37

Sections 3668 to 3670 of the Political Code are "special legislation," in violation of section 25 of article IV of the constitution of this state, and therefore void; and this action is therefore not maintainable. If a law is made applicable only to a part of a class, or only to the whole of a class selected by the legislature from the general body of those who stand in precisely the same relation to the subject of the law, it is void. (*Pasadena* v. *Stimson*, 91 Cal. 249; *People* v. *Central Pac. R. R. Co.*, 83 Cal. 393; *Ex parte Westerfield*, 55 Cal. 550; 36 Am. Rep. 47; *Earle* v. *Board of Education*, 55 Cal. 489, 494; *Miller* v. *Kister*, 68 Cal. 142; *Welsh* v. *Bramlet*, 98 Cal. 219, 226; *Eaton* v. *Brown*, 96 Cal. 371; 31 Am. St. Rep. 225; *San Luis Obispo* v. *Graves*, 84 Cal. 71.) The value of defendant's "federal franchise" was included in the assessment and inseparable therefrom; and the whole assessment is therefore void. (*California* v. *Pacific R. R. Co.*, 127 U. S. 1–45; *San Benito County* v. *Southern Pac. R. R. Co.*, 77 Cal. 518.) The assessment being merely of the "franchise" of the defendant, it was error for the court to refuse to allow the defendant to show by the testimony of the members of the state board of equalization that the board did in fact intend to assess defendant's federal franchise, and did include its value in the assessment made by them, as the effect of the evidence would merely be to remove a latent ambiguity. (*Board of Education* v. *Keenan*, 55 Cal. 642, 649.) In this direct action to recover the tax the so-called record is not conclusive evidence, and may be impeached by evidence parol or otherwise. (*People* v. *Lansing*, 55 Cal. 393.) The record is only *prima facie* evidence. (Code Civ. Proc., secs. 1920, 1962, 1963, 1978.) In any point of view, moreover, the questions propounded to the witness Maslin, as to what was said and done in this matter at the meeting of the board at which this assessment was made, were clearly competent and proper, as the declarations of the members of the board, and even of other persons, while the transaction was in progress, are part

of the *res gestæ,* and may be proved in order to show what was the purpose and intention of the board in that transaction. (*Board of Education* v. *Keenan,* 55 Cal. 642, 648.) The court erred in admitting in evidence the statement furnished by defendant to the state board of equalization, which was offered by the plaintiff to show that it included a valuation of the entire franchise of defendant's road, not even an express consent by defendant to the taxation by the state of the federal franchise, if such consent were given, could destroy the right to have the state abstain from taxing the federal franchise. (*California* v. *Central Pac. R. R. Co.,* 127 U. S. 1; *San Benito County* v. *Southern Pac. R. R. Co.,* 77 Cal. 518.) The court erred in rendering judgment for interest from the date of delinquency. No further addition than the five per cent for interest or otherwise is authorized by statute. (*People* v. *North Pac. Coast R. R. Co.,* 68 Cal. 551; *Haskell* v. *Bartlett,* 34 Cal. 281; *Perry* v. *Washburn,* 20 Cal. 318, 350; Cooley on Taxation, 2d ed., 15.) The court erred in allowing judgment for counsel fees. In cases where counsel fees are allowed by law, they can be awarded only when the plaintiff has paid or become liable to pay them, and to no greater extent than such payment or liability. The object of the law is not to permit speculation on the part of the plaintiff, but merely to reimburse him for what he has properly paid, or become liable to pay, for counsel fees. If he has not paid or become liable to pay any thing he can recover nothing. (*Bank* v. *Treadwell,* 55 Cal. 379; *Prescott* v. *Grady,* 91 Cal. 518, 522.) The allowance of counsel fees to Mr. Aylett R. Cotton was erroneous, as the attorney general had no power to employ him. The attorney general receives from the state a fixed salary, which is not increased by reason of these suits; and the state can therefore recover no counsel fees by reason of his services, whether performed by him in person or by another at his request. (*Bank* v. *Treadwell,* 55 Cal. 379.)

*Attorney General W. H. H. Hart*, and *Aylett R. Cotton*, for Respondent

Sections 3668 to 3670 of the Political Code are not special legislation in violation of section 2 of article IV of the constitution of this state. Those sections apply to all railroads of a certain class. Legislation is not special which applies uniformly throughout the state to all of a class of persons or to all of a class of property. (*Dow* v. *Beidelman*, 49 Ark. 325; *Chicago etc. R. R. Co.* v. *Iowa*, 94 U. S. 155; *Iowa Railroad Land Co.* v. *Soper*, 39 Iowa, 112, 116; *People* v. *McFadden*, 81 Cal. 489; 15 Am. St. Rep. 66; *People* v. *Sacramento County*, 59 Cal. 325; *People* v *Henshaw*, 76 Cal. 445; *Kentucky Railroad Tax cases*, 115 U. S. 337; *Abeel* v. *Clark*, 84 Cal. 226; *State Railroad Tax cases*, 92 U. S. 575; *Pullman's Palace Car Co.* v. *Pennsylvania*, 141 U. S. 18; *Pacific Express Co.* v. *Siebert*, 142 U. S. 339.) The presumption is that these sections are constitutional. (Cooley's Constitutional Limitations, 168.) The court did not err in excluding evidence as to the acts of the board of equalization in considering the value of the federal franchise as an element of value in making the assessment in question. (*People* v. *San Francisco Savings Union*, 31 Cal. 132.) The court did not err in rendering judgment for interest from the date the tax became delinquent, as the tax had the effect of a judgment. (Pol. Code, sec. 3716; Civ. Code, sec. 1920.) The court did not err in rendering judgment for counsel fees. (Pol. Code, sec. 3670.)

*Langhorne & Miller*, also for Respondent.

The state franchise is not so merged with the federal franchise as to be incapable of state taxation. The granting to, and acceptance by, a state corporation of federal franchises does not exempt the corporation from state taxation upon its property, including the franchise derived from the state, which is property subject to taxation (*State Railroad Tax cases*, 92 U. S. 603), provided

that the state cannot tax a federal franchise. (*Western Union Tel. Co.* v. *Massachusetts,* 125 U. S. 530; *Railroad Co.* v. *Peniston,* 18 Wall. 5–50; *Telegraph Co.* v. *Texas,* 105 U. S. 460; *Thomson* v. *Pacific R. R.. Co.,* 9 Wall. 579; *Home Ins. Co.* v. *New York,* 134 U. S. 606; *Van Brocklin* v. *Tennessee,* 117 U. S. 177; *Hamilton Co.* v. *Massachusetts,* 6 Wall. 632; Hare's Constitutional Law, 259.) The record of the state board of equalization making the assessment was in the nature of a judgment, and could not be effected by parol testimony or other evidence outside of the record. (*Phelan* v. *San Francisco,* 6 Cal. 532; *People* v. *San Francisco Sav. Union,* 31 Cal. 132; *San Francisco Gas Light Co.* v. *Dunn,* 62 Cal. 589.) The assessment cannot be held to be an assessment of the federal franchise, and is not illegal. (*Western Union Tel. Co.* v. *Massachusetts,* 125 U. S. 530; *Home Ins. Co.* v. *New York,* 134 U. S. 606; *Thomson* v. *Pacific R. R. Co.,* 9 Wall. 579.) Defendants are bound by the description in their assessment blank, and if the words "franchise within the state" were ambiguous, and included a federal franchise, such ambiguity arose from defendants' own acts and descriptions of their own property, and defendants are estopped from denying the correctness of such descriptions, or the correctness of such assessments following the same. (*People* v. *Stockton etc. R. R. Co.,* 49 Cal. 420; *San Francisco* v. *Flood,* 64 Cal. 504; *Lake County* v. *Sulphur Bank etc. Min. Co.,* 68 Cal. 14; *Dear* v. *Varnum,* 80 Cal. 87.) Defendants have waived all rights to contest the assessments, and cannot be heard in these actions to complain of them, since if such assessments were for any reason invalid, defendants had a complete remedy under section 3665 of the Political Code, which they failed to avail themselves of. (*People* v. *Arguello,* 37 Cal. 524; *People* v. *Whyler,* 41 Cal. 351; *San Jose Gas Co.* v. *January,* 57 Cal. 615; *Ballerino* v. *Mason,* 83 Cal. 449; *Mix* v. *People,* 116 Ill. 265; *People* v. *Commissioners of Taxes,* 99 N. Y. 254; *New Orleans* v. *Canal etc. Co.,* 32 La. Ann. 157; *Northern Pac. R. R. Co.* v. *Patterson,* 10 Mont. 90; *Bratton* v. *Town of Johnson,* 76 Wis. 430;

*Norcross* v. *Milford,* 150 Mass. 237; *Jones* v. *Rushville etc. Co.,* 135 Ind. 595; *Peninsula etc. Co.* v. *Crystal Falls,* 60 Mich. 510; *Rio Grande R. R. Co.* v. *Scanlan,* 44 Tex. 649.) Defendants had a still further remedy given by section 3669 of the Political Code, in which all questions relating to any alleged illegality, either in the assessment or as to the tax, could have been settled, and of which remedy they failed to avail themselves. (*Los Angeles* v. *Ballerino,* 99 Cal. 596.) Sections 3669 to 3671, inclusive, of the Political Code, providing for the collection of these taxes, are not special, unconstitutional legislation, and the amended complaints in these actions fully comply with the decision in *People* v. *Central Pac. R. R. Co.,* 83 Cal. 393. (*Columbus etc. Ry. Co.* v. *Wright,* 151 U. S. 470; 89 Ga. 574; *University* v. *Bernard,* 57 Cal. 613; *Ex parte Burke,* 59 Cal. 12; 43 Am. Rep. 231; *Ex parte Koser,* 60 Cal. 177; *Longan* v. *Solano,* 65 Cal. 122; *Cody* v. *Murphey,* 89 Cal. 522; *Ex parte Lichtenstein,* 67 Cal. 359; 56 Am. Rep. 713; *Ex parte Mirande,* 73 Cal. 365; *State Railroad Tax cases,* 92 U. S. 575; *Chicago etc. R. R. Co.* v. *Iowa,* 94 U. S. 155; *Pacific Express Co.* v. *Seibert,* 142 U. S. 339; *Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232; *Barbier* v. *Connolly,* 113 U. S. 27; *Missouri Pac. Ry. Co.* v. *Humes,* 115 U. S. 512; *Kentucky Railroad Tax cases,* 115 U. S. 337; *Iowa Railroad Land Co.* v. *Soper,* 39 Iowa, 112; *Dow* v. *Beidelman* 49 Ark. 325.) Interest was properly allowed by the court because the taxes, when levied, became a debt, and, by the express provisions of section 3716 of the Political Code, every tax has the effect of a judgment. (*Dunsmoor* v. *Furstenfeldt,* 88 Cal. 529; *People* v. *Reis,* 76 Cal. 280; *San Francisco Gas Co.* v. *Brickwedel,* 62 Cal. 641; *Sacramento County* v. *Central Pac. R. R. Co.,* 61 Cal. 254; *People* v. *North Pac. Coast R. R. Co.,* 68 Cal. 551; *Haskell* v. *Bartlett,* 34 Cal. 281; *Moore* v. *Patch,* 12 Cal. 270; *People* v. *Seymour,* 16 Cal. 340; 76 Am. Dec. 521; *State* v. *Poulterer,* 16 Cal. 515; *City of Oakland* v. *Whipple,* 39 Cal. 112; *San Luis Obispo* v. *Hendricks,* 71 Cal. 245; *State* v. *Memphis etc. R. R. Co.,* 14 Lea, 62; *Sander-*

*son* v. *La Salle*, 117 Ill. 171; *Haas* v. *Misner*, 1 Idaho, 170; *Meredith* v. *United States*, 13 Pet. 486; *Dugan* v. *Mayor etc.*, 1 Gill & J. 499; *Winter* v. *Montgomery*, 79 Ala. 481.) Counsel fees were properly allowed. (Pol. Code, sec. 3670.) There is no statute of the state requiring the fees of counsel employed to conduct state cases to be fixed at any certain sum at the time of their employment, and, in the absence of such statute, the state is certainly bound to pay counsel the reasonable value of their services. There is at least a contract and consequent liability of the state to that extent. (*In re Paschal*, 10 Wall. 485–93; *Huffman* v. *Greenwood County*, 23 Kan. 281; *Smith* v. *Mayor of Sacramento*, 13 Cal. 531.) Where the trial court is, by statute, given the power to allow reasonable counsel fees, the amount of such allowance is within the legal discretion of that court, whose action will not be disturbed by this court, unless it should plainly appear that such discretion has been manifestly abused. (*Estate of Gasq*, 42 Cal. 288; *Estate of Dorland*, 63 Cal. 281; *Peyre* v. *Peyre*, 79 Cal. 339.)

HARRISON, J.—Action to recover the amount of taxes assessed against the defendant by the state board of equalization for the fiscal year ending June 30, 1888.

1. The underlying question upon this appeal is the validity of sections 3668 to 3670 of the Political Code, the appellant contending that the provisions of these sections contravene the provisions of section 25, article IV, of the constitution, and particularly of subdivision 10 thereof, by which the legislature is prohibited from passing a special law " for the assessment or collection of taxes"; that as these sections take from the operation of the general law for the collection of taxes a certain class of railroads, and are applicable to these railroads alone, they are a special law within this prohibition. The distinction between a special and a general law may not be capable of being formulated in a definition which will be exhaustive of the subject and applicable to every case; and the question may be better determined upon a

consideration of each particular case presented for its application by taking into view the purpose and character of the law, as well as the individuals upon which it is to operate. The legislature, in its function of providing for the public welfare and the benefit of the entire people of the state, must determine the character of the laws which it will enact, and, except in so far as it is prohibited by the constitution, should adapt these laws to the condition or necessities of different portions of the state or the different classes of its citizens. The constitution does not require that all the laws which the legislature shall pass shall have a uniform operation in every part of the state, nor does it prohibit legislation for different classes of citizens. The requirement that all laws of a general nature shall have a uniform operation, and that the legislature shall not pass special laws upon certain subjects, still leaves open for determination whether any particular statute is a general or a special law. A law which operates only upon a class of individuals is none the less a general law, if the individuals to whom it is applicable constitute a class which requires legislation peculiar to itself in the matter covered by the law. The class, however, must not only be germane to the purpose of the law, but must also be characterized by some substantial qualities or attributes which render such legislation necessary or appropriate for the individual members of the class. It may be "founded upon some natural or intrinsic or constitutional distinction" (*Pasadena* v. *Stimson*, 91 Cal. 251), but the distinction must be of such a nature as to reasonably indicate the necessity or propriety of legislation restricted to that class. If the conditions of such a class are such as to require legislation which would be inappropriate or injurious to others, or such as to require the enactment of laws which, either in their mode of enforcement or the remedy they provide, are inapplicable to others than the designated class, laws enacted for that class are not special for the reason that they apply to all of the individuals within the conditions. "A law is regarded as

general when the provisions apply to all objects of legislation distinguished alike by qualities and attributes which necessitate the legislation to which the enactment has manifest relation." (*Randolph* v. *Wood,* 49 N. J. L. 85.) The rule has been formulated by the supreme court of Minnesota in the following terms: "The true practical limitation of the legislative power to classify is that the classification shall be based upon some apparent natural reason, some reason suggested by necessity, by such a difference in the situation and circumstances of the subjects placed in different classes as suggests the necessity or propriety of different legislation with respect to them." (*Nichols* v. *Walter,* 37 Minn. 272.) It is very clearly expressed by Mr. Commissioner Temple in *Darcy* v. *Mayor etc.,* 104 Cal. 642: "The classification must be founded upon differences which are either defined by the constitution or natural, and which will suggest a reason which might rationally be held to justify the diversity in the legislation, and must be made for the purpose of meeting different conditions naturally requiring different legislation."

For the purpose of collecting delinquent taxes the railroads upon which the foregoing sections of the Political Code are intended to operate constitute a class distinct from all other railroads, as well as from all other taxpayers. Not only are the sections inapplicable to other delinquent taxpayers, but the mode provided by statute for collecting delinquent taxes from other taxpayers is inapplicable to this class. The constitution has itself established these railroads into a distinct class in providing a special mode of assessment for a portion of their property as the basis upon which their taxes are to be levied, and the form and nature of this assessment renders it eminently appropriate, if not necessary, that the taxes levied against them should be collected in a different mode from that provided for the collection of other taxes. A mere examination of the statutes for the collection of delinquent taxes generally discloses the unsuitableness of those statutes for the col-

lection of delinquent taxes from railroads operated in more than one county. Under those statutes the tax-collector is required to pursue a course which would be entirely inapplicable to these railroads. By section 3764 of the Political Code he is required to publish a delinquent list which must contain a description of the property on which the taxes are delinquent, and, for the purpose of collecting the delinquent taxes by sale of the property, he is required by section 3773 to sell the least quantity of the property assessed for which a purchaser will pay the taxes and costs. Upon such sale he is to make out and deliver to the purchaser a certificate of sale, which must contain "a description of the land sold," and enter the same description in a book kept by him for that purpose. If there is no redemption from the sale he must execute to the purchaser a deed containing the same description. The whole proceedings, commencing with the assessment and culminating in the deed, harmonize with each other, and deal with the property as a unit which can be described, levied upon, sold, and taken into possession by the purchaser. Each item of property assessed is treated as an independent item disconnected with any other, so that upon the sale of one item it can be enjoyed by the purchaser irrespective of the sale of any other item. Such provisions are inapplicable to the railroads under consideration, so far as concerns that portion of their property which is assessed by the state board of equalization. It must be borne in mind that only a portion of their property, viz., the "franchise, roadway, roadbed, rails, and rolling-stock" of railroads operated in more than one county, is thus assessed. The depots, stations, shops, and buildings erected upon the space covered by the right of way are assessed by the assessor of the county in which they are situated, and the taxes upon this property are collected in the same mode as are taxes from other individuals. The constitution provides that after the state board of equalization has made the assess-

ment of the franchise, roadway, roadbed, rails, and rolling-stock at their actual value, the same shall be apportioned to the counties in proportion to the mileage in the different counties. It is the "value" of the property after it has been assessed that is to be apportioned to the several counties. There is no apportionment to the counties of the property itself or of any particular part of that property. Upon the assessment-book of the several counties the assessment that is apportioned by the state board of equalization does not contain a description of the property within that county, or any designation of property upon which the taxes that may be levied could constitute a lien. Only the apportioned part of the assessed value is entered on the books of the county auditor as the basis of the taxes to be levied within the county, the amount upon which the percentage of tax is to be computed, and from which is derived the amount of taxes to be paid by the railroad. The nature of the property required to be assessed by the state board of equalization shows that the property itself is incapable of being apportioned, and that there could be no description entered upon the books which could serve as the basis of a sale or conveyance. Even if the roadway within the county could be described there could be no apportionment to the several counties of the franchise or of the rolling-stock which could serve as a description or be capable of transfer. The franchise is a unit, and can be transferred only as a unit, and the rolling-stock has no particular *situs* in any county, but, in connection with the roadway and roadbed, are essential for the enjoyment of the franchise, while the whole —the franchise, roadway, roadbed, rails, and rolling-stock—constitute an entirety incapable of division. If the taxes for any county that are levied against the railroad upon this apportionment by the state board of equalization are delinquent there is no description of property within that county which can be advertised or incorporated into a certificate of sale and deed. Even if the roadway and roadbed within the several counties

could be made the subject of sale for delinquent taxes the functions of each tax-collector would be limited to his own county, and the purchasers in the different counties might not be the same. If they should be offered for sale, and the tax-collector of each county should offer to sell to the one who would take the least portion thereof within his county, and only an undivided portion thereof should be sold in either county, the difficulties and complications that would arise between the several purchasers and the railroad of themselves indicate the necessity of devising some other mode of collecting the taxes. These and many other considerations that might be presented make it manifest that the constitution itself, by reason of the manner in which it has provided for the assessment of the property of railroads operated in more than one county, has made the laws which are appropriate for the collection of delinquent taxes upon property generally inapplicable to these railroads, and that, inasmuch as they require legislation upon that subject peculiar to themselves, the law enacted for them is a general and not a special law.

The appellant has cited in support of the appeal *People* v. *Central Pac. R. R. Co.*, 83 Cal. 393. In that case the court held that, whether the complaint was to be regarded as an ordinary complaint in a civil action to recover money upon a statutory obligation, or as a complaint under section 3670 of the Political Code, it was insufficient, and that the demurrer to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action was properly sustained. The court also held that a statutory provision for a special form of complaint in an action to recover delinquent taxes contravenes the constitutional prohibition against passing special laws regulating practice in courts of justice; but, as the complaint in the present case is not prepared in that form, that question is not presented. The collection of taxes is not, however, the mere collection of a debt, but is a sovereign act of the state to be

exercised as may be prescribed by the legislature. Whether the tax is collected by an action in court, or by summary sale by the tax-collector, is immaterial. The state through its legislature can avail itself of the judicial power as the means by which it will collect the tax, and in such proceedings it may prescribe such procedure as may best avail for that purpose, irrespective of the mode of procedure provided for the determination of controversies between individuals, just as it may avail itself of the executive branch of the government by authorizing the sheriff to sell the property upon which the taxes are delinquent, without requiring him to pursue the same course as is required in sales upon judgments between individuals. Although the tax is an obligation from the citizen to the state, it is not of the same character of obligations as exists between citizens, and for the purposes of its collection the state is not limited to the same mode or to the same procedure which it prescribes for individuals in the collection of obligations between themselves. There are matters in the opinion of Mr. Justice Fox, in *People* v. *Central Pac. R. R. Co.*, 83 Cal. 393, in support of the contention of the appellant, but, after the court had decided that the complaint was insufficient in any aspect in which it might be viewed, its further opinion of the effect of a complaint that would have sufficiently presented a cause of action must be regarded as *obiter dicta.*

2. It is further urged in support of the appeal that the assessment in question is void for the reason that it includes the franchise received by the appellant from the United States, and in support of this contention *California* v. *Central Pac. R. R. Co.*, 127 U. S. 1, is cited. The appellant originally received from the state of California a franchise to construct and operate its railroad within this state, and subsequently it received from the United States a franchise to construct and operate a railroad from the Pacific ocean eastward, and it is contended that the franchise from the state has

been "merged" into that received from the United States. Appellant has not, however, referred us to any authority which holds that the union of the two franchises in the same corporation will operate as a merger of the state franchise, nor has it invoked any principle of law which would authorize us to hold that such merger took place. A license, or the right to exercise a privilege which is derived from one authority, is not necessarily destroyed or merged by procuring a similar license or right from another authority, any more than is a title to real estate merged by buying in a conflicting title, or taking a conveyance in further assurance from the grantor. The supreme court of the United States, in discussing the right to assess the federal franchise, said in the foregoing action between these parties (*California* v. *Central Pac. R. R. Co.*, 127 U. S. 38): "This important grant, though in part collateral to, was independent of, that made to the company by the state of California." It must be conceded that the state franchise is independent of the federal franchise to the extent that it is capable of being revoked by the state. What the effect of such revocation would be, or whether it would in any respect impair the appellant's right to operate its road under the federal franchise, need not be considered. So, too, if the United States in its visitatorial power should for any reason recall the franchise which it has conferred upon the appellant, the franchise received by it from the state of California would still remain, and enable it to operate its road. Whether the appellant is operating its road under the franchise derived from the United States, or from the state, is immaterial. The right to operate the road is valuable, whether the road is at present operated under the exercise of this right or not. The franchise from the state is still a valid, existing right, and is property which is susceptible of valuation, although its value will depend upon a variety of circumstances. If its exercise is in abeyance while the road is being operated under the

federal franchise it is none the less property, although
that circumstance may diminish its taxable value.

The assessment in the present case is upon the " fran-
chise, roadway, roadbed, rails, and rolling-stock," and
the court finds " that in making its assessment and val-
uation therefor of defendant's franchise, said state board
of equalization did not include, assess, or value any
franchise or corporate power held or exercised by de-
fendant under any act of Congress."   This finding is
fully supported by the evidence.   The constitution (art.
XIII, sec. 10), as well as the statute (Pol. Code, sec.
3665), requires the state board of equalization to include
in its assessment the franchise of the railroad, and in
the present case the property of the appellant which
was assessed by the state board of equalization is de-
scribed as " the franchise, roadway, roadbed, rails, and
rolling-stock of said company within this state."   We
have seen that the state franchise is property susceptible
of valuation, and, as the state board of equalization is
directed to assess the franchise of the appellant, it must
be assumed, in the absence of any other evidence than
the assessment itself, that the board has acted upon
property within its jurisdiction, rather than upon prop-
erty which it has no power to include in the assessment.
Section 3670 makes the duplicate record of assessments
of railways, and the duplicate record of apportionment
of railway assessments, or a copy thereof, *prima facie*
evidence of the assessment, and that the forms of law
in relation to the assessment and levy of such taxes
have been complied with; and, if there were no other
evidence than this, the finding of the court would be
sustained.

The appellant, however, under the provisions of sec-
tion 3664, had furnished to the state board of equaliza-
tion a statement signed by its secretary, as required by
that section, in which it had given as property for which
it was to be assessed a description of its roadway, and
had stated, in addition, " the value of the franchise and
entire roadway, roadbed, and rails within this state is

twelve million two hundred and seventy-three thousand seven hundred and eighty-five dollars." While the mention by the appellant in the statement furnished by it of property which the state board of equalization had no authority to assess would not prevent it from resisting an attempt to enforce an assessment upon such property, yet, if the property so mentioned in the statement could be assessed, or if, as in the present case, the appellant held two franchises, one of which could be assessed and the other could not, it must be held that the franchise which it included in its statement was the one capable of assessment, and that the appellant ought not to be permitted to say that the other was intended by it, or was included in the assessment. (*San Francisco* v. *Flood*, 64 Cal. 504; *Lake County* v. *Sulphur Bank etc. Min. Co.*, 68 Cal. 14; *Dear* v. *Varnum*, 80 Cal. 86.) The value given by the appellant in its statement was not conclusive upon the state board. It was only a portion of the information which the board was to obtain in order to exercise its judgment in fixing the amount at which the assessment should be made. If the appellant felt aggrieved by the value placed upon the property as a unit, or as an aggregate of the several items included in its statement, the statute itself afforded the means by which it could obtain relief. There was no error in admitting these statements in evidence. Upon the contention by the appellant that the assessment included the federal franchise it was competent to show that it had been made in accordance with the statement furnished by it at the request of the state board.

Other testimony was introduced upon the issue presented by the answer that the assessment included the federal franchise, but at the conclusion of the trial the court made the above finding that no federal franchise had been assessed. As there was evidence before it in support of this finding it must be treated here as conclusive, notwithstanding there was other evidence that might be regarded as raising a conflict therewith. It

is recited in the statement on motion for a new trial that after the court had determined as a fact from a preponderance of the evidence before it that the federal franchise was not assessed, it used the following language in a written opinion upon which the findings were based: " But if the parol evidence offered did not weigh in plaintiff's favor, and if, by a preponderance of such evidence, defendants could have shown that the state intended to, and did, include a federal franchise in the assessment, I think the court would have to disregard it as incompetent. The effect of such parol evidence would be to contradict the record, which cannot be done. From both the standpoints of fact and of law the findings must be that a federal franchise was not included in these assessments." From this statement the appellant urges that the evidence offered by it in support of its averment that the assessment includes the federal franchise was disregarded by the court in making its decision, and, as a consequence, that the rule regarding the conclusiveness of a decision upon a conflict of evidence has no application. It clearly appears, however, that the court did not disregard the evidence, but that, after determining as a fact from the preponderance of evidence before it that the federal franchise had not been assessed, it stated that if the preponderance of evidence had been otherwise, it would have held as a matter of law that the assessment must be tested by its own language. The fact that a court, after giving its decision upon an issue, gives its opinion upon the manner in which it would have decided the issue under other circumstances, does not constitute an error to be reviewed in this court.

While Mr. Wilcoxen was being examined as a witness on behalf of the plaintiff the defendant in its cross-examination asked him some questions referring to testimony given by him before the judiciary committee of the assembly in February, 1889, and the witness having admitted the correctness of the testimony, counsel for defendant then stated to the court that he would read

for the court's information the question and answer "upon which" he proposed to interrogate the witness, and, after reading the same, the court stated in substance that the evidence must be confined to the year 1887, to which counsel reserved an exception, and now urges that the court erred in not allowing an examination of the witness as to his previous statement. The court did not, however, refuse to allow the witness to be examined with reference to any previous statement, for the questions and answers were read to the court after the witness had stated that "the testimony is correct all through, the questions and the answers"; nor did the counsel for the defendant present any question "upon" these questions and answers for the ruling of the court, as he had stated was his purpose. If he had desired to question the witness upon any matters relating to other assessments than the one for the year 1887 he should have made a specific offer, or presented a question for the ruling of the court, but, in the absence of such offer or question, there was no error in the court confining the examination to that year.

The court properly excluded the testimony of Maslin concerning the conversations between the members of the state board of equalization during the session at which the assessment was made. The intention of the board or of any of its members, or the signification to be given to the term "franchise," as used in the assessment, could not be shown in this manner, and the evidence could not be used for impeaching purposes unless the members of the board had been previously questioned thereon.

3. The court erred in allowing plaintiff interest on the amount of the taxes. Section 3668 of the Political Code provides that, if the taxes are not paid on the last Monday in December in each year, five per cent shall be added to the principal sum and paid by the delinquent. This is the only penalty given by the statute, but the court has included in its judgment not only this penalty, but also interest upon the principal sum from

the date of the delinquency at seven per cent per annum. Taxes do not bear interest unless it is expressly given by statute (Cooley on Taxation, 2d ed., 17); and the provision in section 3803 for interest upon a certain class of taxes is indicative of an intention upon the part of the legislature to exclude all other classes. A similar question was presented in *People* v. *North Pac. Coast R. R. Co.*, 68 Cal. 551, and decided adversely to the claim of the respondent herein, the court saying: "If it had been intended that interest should be collected on all taxes which the controller might sue for and recover, the complaint formulated by the legislature for their collection would, in our opinion, have demanded judgment for that interest, as well as for the five per cent for nonpayment." The respondent seeks to uphold the judgment by virtue of the provision of section 3716, which declares that "every tax has the effect of a judgment against the person," etc.; and argues therefrom that as a judgment bears interest the tax will also bear interest. By the same reasoning the plaintiff would be entitled to an execution against the defendant under which the sheriff could satisfy the judgment. The "effect" of a judgment is not to bear interest, although that is one of its incidents. As a judgment, the tax is a "final determination" of the amount of public burden which is to be borne by the property on which it is charged; and the further declaration in the same section that the tax, as well as the judgment, is not removed until the taxes are paid or the property sold, indicates the character of the "effect of a judgment" which is given to the tax. It was proper to provide in the judgment that it should bear interest from its date of entry like any other judgment. (*Himmelman* v. *Oliver*, 34 Cal. 246.)

4. The court also held that the plaintiff was entitled to recover for counsel fees for legal services rendered it by Langhorne & Miller a sum equal to seven and a half per cent upon the principal sum of delinquent taxes, and for legal services rendered it by A. R. Cotton, a sum

equal to two and a half per cent upon said principal sum; and rendered judgment accordingly. Langhorne & Miller were the attorneys employed by the state controller to collect these taxes, and commenced this action in January, 1890, and have since that time had charge of the litigation and acted as the attorneys for the plaintiff. In the early part of 1891 the attorney general requested Mr. Cotton "to take a hand generally" in the suit, and after that time he wrote certain briefs which were filed in the case by the attorney general, and assisted the attorney general upon the argument on the demurrer and at the trial of the cause as special counsel. Section 3670 of the Political Code authorizes the controller to institute an action for the collection of these taxes after they have become delinquent, and authorizes the court to include in the judgment in such action such sum for counsel fees as it may determine to be reasonable and just. The power of the controller to employ special counsel in the action has not been questioned by the appellant, and it is, perhaps, deducible from the provision for counsel fees above cited. Section 3670 is in accord with the provisions of section 433 (16) of the Political Code, which make it the duty of the controller "to direct and superintend the collection of all moneys due the state," although the latter section without the direct provisions of section 3670 might not be authority for the institution of the present suit. The appellant, however, insists that the court could not award counsel fees to any other counsel than those employed by the controller, and that the allowance to Mr. Cotton was without authority of law. Section 470 of the Political Code makes it the duty of the attorney general "to attend the supreme court, and prosecute or defend all causes to which the state or any officer thereof in his official capacity is a party." Whether this limits his duty to the prosecution of such causes in the supreme court, or whether it extends to all the courts in the state, need not be considered. If the controller has the right under section 3670 to

intrust the management of the action to other attorneys than the attorney general it would seem that the attorney general would be absolved from the duty imposed upon him by section 470, and that any part that he might take in such action would be voluntary and subordinate to the authority of the attorneys selected by the controller. If, however, he has the right as the law officer of the state to appear in the action, it is only by virtue of his official duty, and for that he would not be entitled to any compensation other than his official salary. This is the view taken by that officer himself, as he stated at the trial in the present action that in his opinion he was not entitled to any compensation. The same reason which would prevent him from being entitled to compensation for the services he might personally render in the action would also prevent him from receiving compensation for any person whom he might employ to assist him, and the court would be no more authorized to award judgment against the defendant for compensation to such assistant than it would be for compensation to the attorney general himself. We have been referred to no provision of law giving to the attorney general authority to employ special counsel to aid him in the discharge of his duties, or authorizing a court to award compensation to such special counsel; and in matters of taxation only such burdens can be imposed upon the taxpayer as have been expressly authorized by law, whether the taxes are collected by a sale of his property or by means of an action for their recovery. We hold, therefore, that the court was not authorized to include in the judgment against the defendant the sum for counsel fees awarded to Mr. Cotton.

The court below is directed to modify the judgment by striking therefrom the amount allowed for interest prior to the entry of the judgment, and also the amount allowed for counsel fees to A. R. Cotton; and, as so modified, the judgment and order denying a new trial will stand affirmed.

DE HAVEN, J., GAROUTTE, J., and BEATTY, C. J., concurred.

Justices VAN FLEET and FITZGERALD, being disqualified, did not participate in the foregoing decision.

McFARLAND, J., dissenting.—I dissent. Passing other questions it is sufficient to say that, in my opinion, the assessment in question is void under the decisions of the supreme court of the United States in the cases of *California* v. *Central Pac. R. R. Co.*, and *State of California* v. *Southern Pac. R. R. Co.*, 127 U. S. 1, because it includes a federal franchise, and thus attempts to tax " one of the means or instrumentalities employed by the United States government for carrying into effect its sovereign powers." That this cannot be done by a state has been the established law ever since the decision of the United States supreme court in *McCulloch* v. *Maryland*, 4 Wheat. 316, which was rendered in 1819. The principle was fully recognized and declared by this court in *San Benito County* v. *Southern Pac. R. R. Co.*, 77 Cal. 518, and *San Francisco* v. *Western Union Tel. Co.*, 96 Cal. 140.

The only difference between the above-mentioned cases in 127 United States and the case at bar is that in the former the trial court found that the state board of equalization included in the assessment the value of " all franchises and corporate powers held and exercised by the defendant"; while in the case at bar the court below found that said board, in making the assessment for the year 1887, " did *not* include in its said assessment any federal franchise." But the assessment in both instances was exactly the same, namely: " *the* franchise" of the railroad. In the former cases it does not appear that the trial court received any evidence on the question as to what " the franchise" included; and it is probable that the finding was based upon the language of the assessment alone. In the case at bar the court did receive evidence as to what the members of the board intended by the words " the franchise"; and it appears in the

record that the court, after having concluded that "from a preponderance of evidence before it the federal franchise of defendant was not assessed or included in the assessment," proceeded to say that "if, by a preponderance of such evidence, defendants could have shown that the state intended to and did include the federal franchise in the assessment, I think the court would have to disregard it as incompetent.   The effect of such parol evidence would be to contradict the record, which cannot be done."   Now, if it was competent to introduce testimony to show the intent of the members of the board when they made the assessment, then the court clearly erred in ruling out certain evidence offered on that point by appellant.   Upon that theory the offered evidence of Maslin, secretary of the board for many years, was clearly admissible and material; and so were the questions asked by appellant in cross-examination of the witness Wilcoxen.   On the other hand, if the record of the board should be alone considered, then it simply appears that "the franchise" was assessed; and I cannot possibly see how that phrase can be construed to mean any thing else than the *whole* franchise of the railroad—all the franchise belonging to it.   It means just what the lower court had found it to mean, as above quoted, in said cases in 127 United States.   The words "the franchise" clearly, in my judgment, includes the right of appellant to do business—and the whole of that right.   That right is a unit and inseparable.   The court below found that the board "did assess as a unit, and not separately, the franchise, roadway," etc.   And I cannot conceive how a court can, first, separate it, or second, if it could, how it could determine which part to throw away.   Moreover, the main foundation of the doctrine of *McCulloch* v. *Maryland*, 4 Wheat. 316, is that the power to tax includes the power to destroy; and thus a state might, under the guise of taxation, destroy or materially cripple an instrumentality of the federal government.   And is it not manifest that in the case at bar that principle protects the instrumentality here in-

volved from injury or destruction under the pretense that only that part of the unity which comes from the state is taxed? Are not the effects and consequences the same?

In my opinion, therefore, without discussing the other questions involved, the judgment should be reversed.

Rehearing denied.