EAST TENNESSEE BREWING COMPANY *v.* JOHN M.
CURRIER, Clerk, *et al.*\*

(*Knoxville.* September Term, 1912.)

1. INTOXICATING LIQUORS. Wholesalers and retailers are de-
fined for purposes of taxation.

Under the statutes (Acts 1907, ch. 547, and Acts 1909, ch. 479),
providing that "persons selling liquors in quantities of one quart
or more, except manufacturers selling to dealers in original
packages of not less than five gallons, are wholesale dealers,
and persons selling smaller quantities than five gallons are
retail dealers," a brewer not selling liquor in quantities less
than one quart, but not confining its sales to dealers in orig-
inal packages of five gallons or more, is only liable for the
taxes imposed on wholesalers, and not for that imposed on
retailers; for, under this statutory definition, a dealer's *status*
as a wholesaler or retailer is determined by the quantity of
liquor sold, and not by the fact whether the sale is to other
dealers or to consumers. (*Post, pp.* 538-541.)

Acts cited and construed: Acts 1907, ch. 547; Acts 1909, ch. 479.

Cases cited, distinguished, and approved: State v. Lowenhaught,
11 Lea, 13; Harrison v. State, 96 Tenn., 548.

2. CONSTITUTIONAL LAW. Statute authorizing distress war-
rant for delinquent privilege taxes without previous notice or
demand is not unconstitutional for that reason.

The statute (Acts 1907, ch. 540, first prescribing the amount of
the privilege taxes exacted of wholesale and retail liquor
dealers and then providing that "the procuring of United States
revenue license to wholesale or retail liquor dealers shall be
taken as *prima facie* evidence that the parties are in the whole-

---

\*As to what amounts to retail sale as distinguished from whole-
sale, see note in 32 L. R. A. (N. S.), 622.

sale or retail liquor business, and are subject to State and county taxes," and (by section 18) making it the duty of privilege taxpayers to pay promptly the tax, and providing that, if the tax be not paid when due, a penalty of one per cent. of the amount of the delinquent tax for each day's delinquency shall be paid, and that the clerk of the county court shall issue a distress warrant for the collection of the taxes and penalties, and shall enforce the collection thereof as in other cases, is not invalid as depriving such tax debtor of property without due process of law, upon the ground that it directed the collection of such privilege tax by distress warrants, without previous notice to or demand upon the delinquent taxpayer. (*Post, pp.* 541-547.)

Acts cited and construed: Acts 1907, ch. 540, sec. 18; Acts 1909, ch. 479.

State and federal constitutional provisions with respect to due process and the law of the land are applied and construed, but not cited.

Cases cited and approved: Myers v. Park, 8 Heisk., 540; Murray v. Improvement Co., 18 How., 282; Hagar v. Reclamation, 111 U. S., 709, 710.

3. **SAME. Same. Summary remedies are valid if delinquent taxpayer is given an opportunity to contest the validity of the tax.**
Laws providing summary remedies for the collection of delinquent taxes are not unconstitutional, because they dispense with some of the formalities of ordinary judicial procedure, or cut off technical defenses, or authorize the seizure of the property before a hearing, provided the taxpayer is given an opportunity at some stage to contest the validity of the tax. (*Post, pp.* 547, 548.)

4. **PRIVILEGE TAXES. Distress warrant for specific tax fixed by statute without notice or assessment; otherwise, under statute as to merchant's tax and privileges depending on valuation of property invested in business.**

Brewing Co. v. Currier.

The statute (Acts 1907, ch. 602, sec. 30), providing for the back assessment and reassessment of property omitted from taxation, and that, in case of merchant's tax and delinquent privilege tax, the county court clerk shall issue a citation for the purpose of back assessment, which citation shall cite the delinquent to appear for the purpose "of being assessed or reassessed for the years ——, upon omitted or inadequately assessed property . . . , and show cause, if any, why said property should not be back or reassessed at its actual cash value," applies to the assessment of property according to valuation, and privilege taxes like that of the merchant's privilege tax the amount of which depends upon the valuation of the property invested in the business, and not to licenses or privilege taxes, the specific amount of which is fixed by statute, and is not dependent in any sense upon assessment or valuation, and does not apply to the specific privilege tax imposed upon wholesale liquor dealers, so that the five days' notice prescribed by said statute was not required to be given to said delinquent before issuing the distress warrant. (*Post, pp.* 548-550.)

Acts cited and construed: Acts 1907, ch. 602, sec. 30.

Case cited and approved: Foppiano v. Steed, 113 Tenn., 167-172.

5. SAME. Statutory penalties for delinquency will not be enforced where tax was not demanded, and its validity was doubted.

Where in a chancery suit to contest the validity of a distress warrant issued by the clerk of the county court against a brewer to collect delinquent privilege taxes, it appeared that a brewer's license had been theretofore erroneously construed by the revenue department of the State as permitting sales which in law rendered the brewer liable for a specific wholesale privilege tax, and that it had been the custom of the clerk of the county court to notify the particular brewer when the privilege taxes required of him were due and that no demand was ever made of the taxes sought to be collected by distress warrant, the penalty of one per cent. for each day's delinquency imposed

by statute (Acts 1907, ch. 540, sec. 18) will not be enforced against the brewer for failure to pay the tax when due, because the validity of the tax was doubted. (*Post, pp.* 550, 551.)

Acts cited and construed: Acts 1907, ch. 540, sec. 18.

---

FROM KNOX.

---

Appeal from the Chancery Court of Knox County.— W. D. WRIGHT, Chancellor.

WEBB & BAKER, for complainant.

ATTORNEY-GENERAL CATES, for State.

JAMES G. JOHNSON, County Attorney, for Knox County.

---

MR. JUSTICE GREEN delivered the opinion of the Court.

The complainant brewing company was engaged in the manufacture and sale of beer during the two years from November 30, 1907, to November 30, 1909. For this period it paid the brewer's license taxes, required by the revenue acts of 1907 and 1909, to the State and county. Chapter 547, Acts of 1907; chapter 479, Acts of 1909.

We find, however, from the proof in this case, which we have orally discussed, that during said period, com-

plainant sold beer to others than dealers, and otherwise than in original packages of five gallons each.

In both of the revenue acts just cited, fixing the liquor dealers' tax; the following provision occurs:

"Persons selling liquors in quantities of one quart or more, except manufacturers selling to dealers in original packages of not less than five gallons, are wholesale dealers, and persons selling smaller quantities than five gallons are retail dealers."

Inasmuch as the brewing company did not confine its sales to dealers in original packages of not less than five gallons, it became liable for a liquor dealer's tax.

Since, however, it appears to have made no sales in less quantities than one quart, we think it only became liable for the tax demanded of wholesale dealers.    It being insisted for the State and county that complainant is liable both for wholesalers' and retailers' tax, this matter may properly be disposed of in the outset.

As correctly pointed out in the Comptroller's Tax Digest, 1907:

"The above statutory definition of wholesale and retail liquor dealers is apparently confusing; but the meaning seems to be clear that a retail dealer, licensed as such, may sell in any quantities less than five gallons, while a wholesale dealer, licensed as such, may sell in any quantities not less than one quart.    The limit of the maximum quantity which the retail dealer may sell is any quantity less than five gallons, while the limit of the minimum quantity which the wholesale dealer may sell is one quart.    The apparent confusion grows out of

the fact that both retail and wholesale licensed dealers may sell any quantities of a quart or more and under five gallons, and any quantity between such minimum and maximum. But the distinctive characteristic of each is that the wholesale licensed dealer is unlimited as to the maximum quantity of sales, and is only limited to the minimum quantity of one quart, while the retail licensed dealer is unlimited as to the minimum quantity of sales, and is only limited to the maximum quantity of less than five gallons."

The permission to the retail dealer to sell as much as five gallons does not necessarily render a dealer selling less than five gallons a retailer. So long as the dealer does not sell in lesser quantities than one quart, he is protected by a wholesale dealers' license.

Under the acts of 1907 and 1909, a dealer's *status*, whether he be a wholesale dealer or a retail dealer, is not determined by the nature of his sales—whether to other dealers or to consumers. Such was formerly the rule. *State* v. *Lowenhaught*, 11 Lea, 13. It was expressly said, though, in that case:

"We have no definition in terms, in any of our statutes, of a wholesale dealer in liquor, nor of a retail dealer."

After this decision, such a definition in terms was written into the statutes, as we have seen. Under this definition the class to which the dealer belongs was fixed by the quantities in which he sold liquor. It became immaterial whether the sales were to dealers or to consumers.

*Harrison* v. *State,* 96 Tenn., 548, 35 S. W., 559, dealt with sales by a distiller or manufacturer.

By the statutes quoted, dealers who sell in quantities of not less than one quart are wholesale dealers, regardless of the character of their patrons.

On the 30th day of November, 1909, upon application of the revenue agent, the county court clerk, without notice to, or demand of, the brewing company, issued a warrant against it to distrain and sell the goods and chattels of said company sufficient to pay $9,909, interest and penalties.

This warrant was levied on certain property of the brewing company, which was taken into the officer's possession. A bill was filed by the brewery to enjoin further procedings in behalf of the county, on said distress warrant, and to recover the State tax, which tax was paid under protest.

It is contended for the brewery that said distress warrant, issued without notice or demand, is illegal; and, further, that if the issuance of said warrant in such a manner is sought to be justified by any statute, such statute is in violation of the several State and federal constitutional provisions with respect to due process and the law of the land, because the brewery denied that it was a liquor dealer and liable for the tax, and, under this procedure, its property was seized without any opportunity afforded it to be heard on the question of its liability.

It is provided, by chapter 540 of the Acts of 1907, after setting out the amount of the privilege tax exacted

from the wholesale and retail liquor dealers, that "the procuring of United States revenue license to wholesale or retail liquor dealers shall be taken as *prima facie* evidence that the parties are in the wholesale or retail liquor business and are subject to State and county taxes, unless established by proof that they are not so engaged. Upon any clerk's receiving knowledge of such internal revenue license, he shall have a right to collect the taxes by distress warrant."

Section 18 of said act provides:

"That it shall be the duty of privilege tax payers to promptly pay the privilege tax levied under this act when the same becomes due; and in case any privilege tax is not promptly paid when the same is due by law, the person, firm, association or corporation liable therefor shall pay a penalty of one per centum of the amount of the delinquent tax for each day's delinquency. . . . The clerks of the county courts of the various counties of the State are hereby authorized and empowered, and it is hereby made their duty, as soon as any privilege tax, or any part of same, is delinquent, to issue a distress warrant for the collection of the taxes and penalties thereon, and to enforce the collection of same as in other cases."

The revenue act of 1909 contains provisions similar to those quoted from the act of 1907.

So it is apparent, under these acts, that the clerks of the various county courts are not only authorized, but directed to collect these privilege taxes by distress warrant under the circumstances heretofore detailed, and

there is no provision or requirement that any notice, demand, or citation be given to a delinquent prior to the issuance of such warrants.

It has been long the practice in Tennessee, and it has long been settled in other jurisdictions, that a sovereign State is entitled to collect its dues from individuals by summary process. States are not bound by the same rules as individuals in asserting their rights, and proceedings that would lack due process if instituted by an individual, and would not be in accordance with the law of the land when instituted by the State, are permissible and always have been.

It was said by the supreme court of the United States that "probably there are few governments which do, or can, permit the claims for public taxes, either on the citizen or the officer employed for their collection or disbursement, to become the subjects of judicial controversy according to the course of the law of the land. Imperative necessity has forced a distinction between such claims and all others, which has sometimes been carried out by summary methods or proceedings, and sometimes by systems of fines and penalties, but always in some way observed and yielded to." *Murray's Lessees* v. *Hoboken Land Improvement Co.,* 18 How., 282, 15 L. Ed., 372.

The learned Justice Curtis, delivering the foregoing opinion, further observed that "we apprehend there has been no period since the establishment of the English monarchy when there has not been, by the law of the land, a summary method for the recovery of debts due

to the crown, and especially those due from receivers of revenue."

It was also said that the methods of ascertaining duties due the government have included various methods, among others, an inquisition without notice and a species of execution bearing a close resemblance to a distress warrant.

This court expressly aproved the foregoing language, in the case of *Myers* v. *Park,* 8 Heisk., 550.

Judge Cooley says:

"Due process of law, under the fourteenth amendment, does not require judicial procedings in enforcing a tax, although it is competent to provide for them, and therefore, as applied to the proceedings for the levy and collection of taxes, it does not imply or require the right to such notice and hearing as are deemed essential to the validity of the proceedings and judgments of judicial tribunals."   Cooley on Taxation, vol. 1, p. 59.

Another author says:

"Due process of law in taxation is that which is due and appropriate; i. e., suitable to the nature of the case in what are known as license, privilege, or occupation taxes, and those imposed upon specific things.   Where the amount to be paid is fixed by law, and no valuation is required, hearing would be of no service, and therefore none is required."   Judson on Taxation, sec. 319, p. 371.

Mr. Justice Field has said:

- "Of the different kinds of taxation which the State may impose, there is a vast number of which, from their

nature, no notice can be given to the taxpayer, nor would notice be of any possible advantage to him—such as poll tax, license tax (not dependent upon the extent of his business), and generally specific taxes on things or persons or occupations. In such cases, the legislature, authorizing the tax, fixes its amount, and that is the end of the matter.

"If the tax be not paid, the property of the delinquent may be sold, and he be thus deprived of his property. Yet there can be no question that the proceeding is due process of law, as there is no inquiry into the weight of the evidence, or element of a judicial nature, and nothing could be changed by hearing the taxpayer. No right of his is therefore invaded. Thus, if the tax on animals be a fixed sum per head, or on articles a fixed sum per yard, or bushel, or gallon, there is nothing the owner can do which will affect the amount to be collected from him. So, if a person wishes a license to do business of a particular kind, or at a particular place, such as keeping a hotel or restaurant, or selling liquor or cigars, or clothes, he has only to pay the amount required by the law and go into business. There is no need in such cases for notice or hearing." *Hagar* v. *Reclamation District,* 111 U. S., 709, 710, 4 Sup. Ct., 668, 28 L. Ed., 569.

Under the authorities, it is manifest that the brewery was entitled to no notice in advance of the levy and assessment of these taxes. The statute levied them, and the amounts were fixed. If the brewery was engaged in the wholesale or retail liquor business, it, of course, knew that; and it is charged with notice that it was

liable for the license tax exacted by the State for the pursuit of such avocation.

The brewery was also charged with notice of the provision of this statute as to the effect of taking out federal license, and it knew, or is charged with notice of, the fact that it became the duty of the county court clerk upon the discovery by him that such license had been taken out by the brewery, to issue a distress warrant against it for the payment of the State tax against the avocation which it was apparently following. The brewery company might have gone to the clerk and explained to him the character of its business, and in this way have been heard on the merits of its case prior to the issuance of the distress warrant.

The statute made the possession of the federal license *prima facie* evidence that it was liable for the State license, and it made it the duty of the clerk to collect the State and county tax forthwith. If the brewery wished to escape a distress warrant, under such circumstances, it should have made some explanation to the clerk. In the absence of such an explanation, the clerk was not required to make any demand upon it, or give it any notice. He was doing his duty and following the plain mandate of the statute when he issued the distress warrant herein.

Beyond this, the brewery company still had several ways to have its rights established in this case. It might have taken proceedings upon the distress warrant, as against the county, into the circuit court, by *certiorari.* It might, as it has done, have enjoined such

proceedings in behalf of the county. As to the State tax, of course, it had this to pay. The State does not litigate as an individual, and does not allow its demands for taxes to be held up pending controversy with an individual. The State requires its dues paid, but offers to the individual full opportunity, by paying under protest, with the privilege of suit for their recovery, to have the merits of every claim for taxes fully heard and considered. This is as much as an individual can claim in such a controversy with the State, and such proceedings are according to the law of the land.

The rule is well stated in the Cyclopedia of Law, as follows:

"Laws providing summary remedies for the collection of delinquent taxes are not open to the constitutional objection, because they dispense with some of the formalities of ordinary judicial procedure, or cut off technical defenses, or authorize the seizure of the property first and the hearing afterward, provided only that the taxpayer is given an opportunity at some stage of the procedings, and before his rights are finally cut off, to contest the validity of the tax or his liability in respect thereto." 37 Cyc., 1233.

The question of summary remedies for the collection of taxes is also discussed at length by Judge Cooley, in Cooley on Taxation, vol. 2, pp. 827-830, and the question of due process and the law of the land are discussed in the same work, in volume 1, p. 51, et seq.

From all the authorities, it is evident that the State has the power to assess taxes and fix methods for the

collection thereof, and it does not matter if these remedies be summary in their nature, so long as the taxpayer is in some way, at some stage of the proceedings, given an opportunity to be heard and have his rights determined before some competent tribunal.

The statute in this case directed the issuance of a distress warrant upon certain conditions made to appear to the clerk of the county court.

The statute might have prescribed that notice be given to the delinuent taxpayer before the issuance of a warrant; but the legislature did not see proper to include such a provision, and it was entirely within their power to omit it, inasmuch as the taxpayer has open to him the several methods, heretofore pointed out, of calling in question the validity of the demand made against him.

It is urged, however, on behalf of the brewery, that the taxes here sought to be collected are back taxes, and that under chapter 602 of the Acts of 1907 it was necessary for the clerk of the county court to have given the delinquent taxpayer five days' notice before undertaking proceedings for the collection of such taxes.

Section 30 of the said act, upon which complainant relies, undertakes to provide for back assessment or reassessment of property omitted from taxation or inadequately assessed, and undertakes to provide a method for reassessing or back assessing such property. It is provided that "in the case of merchant's tax and delinquent privilege tax" the county court clerk shall issue a citation for the purpose of back assessment. The form of citation which the clerk is required to issue is

set out, and, under its terms, the delinquent is cited to appear for the purpose "of being assessed or reassessed for the years ——, ——, ——, upon omitted or inadequately assessed property in the said county and State, and show cause, if any, why said property should not be back or reassessed at its actual cash value."

The privilege taxes referred to in this section are unquestionably taxes like the merchant's privilege tax, the amount of which depends upon the valuation of the merchant's property engaged in business. The whole section has to do with the assessment of property according to valuation, and can have no reference to licenses or taxes, the amount of which is fixed by legislative act, and is not dependent in any sense upon assessment or valuation. The form of citation required to be issued demonstrates this contention. Such a citation would be absolutely without sense or meaning, if issued with respect to a privilege tax, which is fixed and assessed by the legislature, and as to the amount of which the revenue officials have no discretion. The valuation of the property of the liquor dealer has no bearing whatever on the amount of his liquor dealer's license, as distinguished from his merchant's license.

This question was formerly settled by the court in the case of *Foppiano* v. *Steed*, 113 Tenn., 167-172, 82 S. W., 222, 223. This court there said:

"But we do not think it at all necessary that there should be such back assessment or reassessment of privilege taxes, since the statute fixes the amount and makes it the duty of all persons exercising privileges to

come forward and obtain a license from the clerk and pay therefor the amount fixed by law. Under these statutes, it is not only the duty of the person exercising the privilege to promptly pay the tax, but is also the duty of the clerk of the county court to call upon such person for the taxes if he fail to pay. It is no less his duty, if such person has been exercising the privilege for three years therefore without payment, to take steps, by distress warrant or otherwise, to compel such payment."

We think, therefore, that section 30 of chapter 602, Acts of 1907, was not intended to change the rule with reference to the collection of delinquent privilege taxes, such as these sought here to be collected.

It appears in this record, by the deposition of the comptroller of the State, that a brewer's license has hitherto been construed by the revenue department of the State as permitting such sales as were charged against this brewery. This, of course, was an erroneous construction.

It also apears that it had been the custom of the county court clerk to notify this taxpayer when all privilege taxes required of him were due, and that no demand was ever made by the clerk of the brewery for the taxes here sought to be collected.

In view of these facts, the court is of the opinion that the penalties sought to be collected by the distress warrant should not be enforced against this company. It is conceded that no such taxes had hiterto been exacted of the company, and it is obvious that there was some doubt as to whether this company was liable for the

wholesaler's tax, even in the minds of the revenue officers of the State.

Judge Cooley observes that even in cases like this one "there might be excuse for nonpayment which would justify the interference of the courts, to avoid penalties." Cooley on Taxation, vol. 2, p. 901.

He further says that "the penalty should not be exacted if the delay came from serious doubt of the validity of the tax." Id., p. 902.

"It is held a sufficient ground for refusing to enforce the penalty that the officers did not give the taxpayer notice or demand to which he was entitled; . . . that he made an honest mistake as to the amount, extent, or value of his taxable property; that he entertained a sincere and reasonable belief that the particular property was exempt, or was not taxable, particularly where such belief was founded on the advice of counsel, or was the subject of judicial consideration, or such as fairly to warrant a resort to the courts." 27 Cyc., 1544.

So, under the circumstances of this case, we do not think that the statutory penalties should be added to the taxes for which we have herein held the brewing company liable.

It is liable for taxes as a wholesale liquor dealer for the two years for which taxes are herein sought to be collected, with interest, to which the revenue officer's fee, based on the amount here decreed, is to be added.

We are of opinion that there was no excessive levy made by the officers in charge of this distress warrant, and that there should be no recovery as against them.

Other questions made in the case, while not properly raised in the pleadings, have been considered, and are deemed without merit.

This 'cause will be remanded to the chancery court of Knox county for a decree in accordance with this opinion.

The complainant will pay the costs of this court, and the costs below will be adjudged by the chancellor.