[Sac. No. 5360.   In Bank.—July 30, 1941.]

THE PEOPLE, Appellant, v. ROY J. SKINNER, Respondent.

Earl Warren, Attorney-General, H. H. Linney, James J. Arditto, Valentine A. Brookes and Adrian A. Kragen, Deputies Attorney-General, and Roger J. Traynor for Appellant.

Norman Elkington for Respondent.

Eugene H. O'Donnell, George Acret, Howard B. Crittenden, Jr., H. R. Whiting and Morgan V. Spicer, as *Amici Curiae*, on Behalf of Respondent.

SHENK, J.—On rehearing, we approve and adopt the opinion rendered herein on the former hearing, as follows:

"The defendant moved to set aside as void a so-called 'judgment' entered in accordance with the provisions of section 26 of the 'Retail Sales Act of 1933' as amended (Stats. 1935, p. 1262 [Deering's Gen. Laws, 1937, Act 8493]). The plaintiff appealed from the judgment entered on the trial court's order granting the motion.

"The appeal presents the question of the correctness of the trial court's conclusion that the provisions of said section 26 are unconstitutional.

"The defendant conducted as 'owner' an auto sales company in San Francisco. Therefore, as a retailer of tangible personal property, he was required, under permits duly issued pursuant to the Retail Sales Act of 1933, to make accurate returns of sales and to pay the tax found to be due on account of sales of tangible personal property.

"On June 22, 1936, the State Board of Equalization filed in the county clerk's office in Sacramento, pursuant to said section 26, a 'certificate of amount of tax, interest and penalty due and request for judgment.' The board itemized the tax due as $9,413.81; interest, $569.39; penalty, $1220.08; total, $11,203.28. Pursuant to the request and on the same day a 'judgment for Retail Sales Tax' was entered against the defendant for the total tax shown by the certificate to be due.

"About one-third of the tax was computed on voluntary returns made by the defendant. The balance comprised two additional assessments made by the Board on sales not re-

ported by the defendant. By the defendant's testimony it appeared that several auditors occupied a month or six weeks in examining his records before the final additional assessment was made and total tax, interest and penalties computed. There was evidence that notices of such additional assessments were duly mailed to the defendant. A notice was mailed to the defendant on March 20, 1936, which showed that on January 25, 1936, there was due from the defendant a total of tax, interest and penalty of $10,904.85. The defendant was adjudged a bankrupt, and on May 25, 1936, under oath in the bankruptcy proceeding, he listed his sales tax liability to the State of California as $10,904.81.

"Subsequent to the filing of the certificate of the Board of Equalization in the county clerk's office in Sacramento, and on May 17, 1939, the defendant filed his affidavit and notice of motion to set aside and vacate the 'judgment' entered pursuant to said section 26. The motion was made on the ground that the judgment was void because it violated the due process clauses of the state and federal Constitutions, and the prohibition against special legislation contained in section 25 of article IV of the state Constitution. It was stipulated that no summons or notice of any kind was ever served personally on the defendant. As stated, there was evidence that notices of the additional assessments were mailed to the defendant at his place of address in San Francisco. In his affidavit the defendant alleged 'that all notices served upon him by the State Board of Equalization under the provisions of the "Retail Sales Act of 1933" as amended, were served upon him by mail.' He also alleged that 'during all of said times he was actually living and employed in said city and county of San Francisco; that during all of said times and more particularly at the time of the mailing of said notices of additional assessment and of estimate, tax and penalty, the home address, the business address and the personal whereabouts of said defendant were known to the State Board of Equalization.' The foregoing testimony and admissions are sufficient upon which to predicate a conclusion, at which the trial court arrived, that the requirements respecting the notices provided by the pertinent portions of the act were complied with by the board. As noted, the trial court granted the defendant's motion on the grounds that the provisions of section 26 deprived the defendant of due

process, and that they constituted special legislation. Therefore the principal question for determination is whether the pertinent provisions of the act are in harmony with constitutional requirements.

"Section 17 of the act provides that if the board is not satisfied with the return and payment of tax made by the retailer, it may make an additional assessment based upon the facts contained in the return or upon any information that it may have or obtain; and provides also for certain penalties on account of such additional assessment which it is not necessary to note specifically. That section also requires written notice to be given to the retailer, which may be served either personally or by mail. Section 18 makes similar provisions with respect to assessments imposed by reason of the failure of the retailer to make any return.

"Section 20 gives to the retailer against whom an assessment was made pursuant to sections 17 or 18, the right to file, within fifteen days after the service of notice, a petition for reassessment. It states: 'If a petition for reassessment is not filed within said fifteen day period the amount of the assessment becomes final at the expiration thereof.' The section also provides for a hearing by the board in the event a petition for reassessment is filed within the time specified. The act (sections 20 and 33) also makes provision for resort to a judicial tribunal for a consideration and determination of the question whether there was an abuse of discretion on the part of the board.

"Section 21, as applied to the facts of this case, requires that every notice of additional tax proposed to be assessed be mailed to the retailer within three years after the retailer's return is filed. No question arises with respect to the time of the mailing of the notices herein.

"Section 26 of the act provides that when any tax, etc., is not paid when due, the board may file in the office of the county clerk of Sacramento County, or any other county, a certificate specifying the amount of the tax, interest and penalties, with the name and last known address of the retailer liable therefor; stating that the board has complied with all the provisions of the act in relation to the computation and levy of the tax; and requesting that 'judgment be entered against the retailer in the amount . . . set forth in the certificate. The county clerk immediately upon the filing

of such certificate shall enter a judgment . . . against the retailer. . . . ' It also provides that an abstract of the judgment may be recorded in any county, whereupon the amount shown shall constitute a lien upon all real property of the retailer in such county, which shall have the force, effect and priority of a judgment lien, and that execution shall issue upon such judgment upon request of the board in the same manner as upon other judgments under the Code of Civil Procedure. By the same section the board is also given power, after delinquency in the payment of tax and notice thereof by registered mail and notice of an intended sale by mail and publication any time within three years, forthwith to collect such taxes by seizure and sale of sufficient real or personal property not exempt from execution to satisfy the amount due. That section also expressly provides that the remedies of the state shall be cumulative, and that the pursuit of one remedy shall not be deemed an election to the exclusion of any other remedy.

"The trial court concluded that the certificate of the board was executed and filed in accordance with the provisions of section 26. There is no merit in the contention that the certificate was invalid because signed by tax counsel appointed by the board, rather than by the board itself. Section 27 of the act specifically empowers the board to appoint such assistants as it may deem necessary to enforce its powers and perform its duties under the act. The execution of the certificate through such duly appointed administrative assistant is a compliance with the provisions of the act.

"The defendant contends that section 26 of the act offends the constitutional due process clauses in two respects, namely, that a personal judgment is permitted to be entered against the retailer without provision for prior personal notice and hearing in a court as provided by the Code of Civil Procedure, and that the section confers on the Board of Equalization arbitrary and unreasonable powers. In urging that the provisions of section 26, permitting a judgment to be entered against the retailer in the manner therein prescribed, is special legislation, the defendant argues that the 'judgment' provided by said section is a 'judgment *in personam*', is governed by the rules of due process, that said rules require personal service of notice and a judicial hearing before such

judgment may be entered, and is further governed by the general laws relative to actions *in personam*.

"The defendant and the trial court have misapprehended the requirements of due process involved in proceedings for assessment, levy, and collection of taxes, and the significance of the procedure prescribed by section 26 in relation to the constitutional provisions invoked by the defendant.

"Obviously if an action in a court or other judicial tribunal be necessary for a judgment for the collection of taxes, the state is bound by the provisions applicable to the conduct of such action, and by the general law governing jurisdiction of parties and subject matter. But as long standing as the common law itself is the rule that a more summary method may be provided for the collection of taxes due to the sovereign than is provided for the recovery of judgment for debts between private citizens. This power of government received early recognition in this country. The case of *Den ex dem. Murray's Lessee* v. *Hoboken Land & Improvement Co.*, 59 U. S. (18 How.) 272 [15 L. Ed. 372], involved the collection of moneys from a defalcating customs inspector. Summary seizure of property to satisfy the debt was objected to on the ground of lack of due process. The court said: 'The words, ''due process of law'', were undoubtedly intended to convey the same meaning as the words, ''by the law of the land'' in *Magna Carta*. . . . We apprehend there has been no period, since the establishment of the English monarchy, when there has not been, by the law of the land, a summary method for the recovery of debts due to the crown. . . . It is certain that this diversity in the ''law of the land'' between public defaulters and ordinary debtors was understood in this country, and entered into the legislation of the colonies and provinces, and more especially of the States, after the declaration of independence and before the formation of the constitution of the United States. . . . For, though ''due process of law'' generally implies and includes *actor, reus, judex,* regular allegations, opportunity to answer, and a trial according to some settled course of judicial proceedings . . . yet, this is not universally true. There may be, and we have seen that there are cases, under the law of England after *Magna Carta*, and as it was brought to this country and acted on here, in which process, in its nature

final, issues against the body, lands and goods of certain public debtors without any such trial. . . . The power to collect and disburse revenue, and to make all laws which shall be necessary and proper for carrying that power into effect, includes all known and appropriate means of effectually collecting and disbursing that revenue, unless some such means should be forbidden in some other part of the constitution. . . . It may be added, that probably there are few governments which do or can permit their claims for public taxes . . . to become subjects of judicial controversy, according to the course of the law of the land. Imperative necessity has forced a distinction between such claims and all others, which has sometimes been carried out by summary methods of proceeding, and sometimes by fines and penalties, but always in some way observed and yielded to.'

"*Springer* v. *United States,* 102 U. S. 586 [26 L. Ed. 253], involved a summary method of execution and collection of personal income taxes, objected to under the constitutional guaranty of due process. In holding that congress could provide the power to distrain realty as well as personalty, the court said: 'The proceedings of the collector were not in conflict with the amendment to the constitution which declares that "no person shall be deprived of life, liberty, or property without due process of law." . . . The prompt payment of taxes is always important to the public welfare. It may be vital to the existence of a government. The idea that every tax-payer is entitled to the delays of litigation is unreason. If the laws here in question involved any wrong or unnecessary harshness, it was for Congress, or the people who make Congresses, to see that the evil was corrected. The remedy does not lie with the judicial branch of the government.'

"It has been held that due process is satisfied if notice and an opportunity to question the validity or amount of the tax be provided for at some stage in the proceedings; that the notice does not have to be personally served; that notice of every step in the proceedings is not required; and that it is sufficient if the finality of the assessment be determined by the taxing authorities. (*Weyerhaueser* v. *Minnesota,* 176 U. S. 550 [20 Sup. Ct. 485, 44 L. Ed. 583] ; *Hodge* v. *Muscatine County,* 196 U. S. 276 [25 Sup. Ct. 237, 49 L. Ed. 477] ; *In re Sutter-Butte By-Pass Assess. No. 6, etc.,* 191 Cal. 650

[218 Pac. 27]; *Wulzen* v. *Board of Supervisors,* 101 Cal. 15 [35 Pac. 353, 40 Am. St. Rep. 17].)

"In the discussion of the general subject of the system of enforcing the government's claims for taxes, the court said in *Bull* v. *United States,* 295 U. S. 247, 259 [55 Sup. Ct. 695, 79 L. Ed. 1421]: 'A tax is an exaction by the sovereign, and necessarily the sovereign has an enforcible claim against every one within the taxable class for the amount lawfully due from him. The statute prescribes the rule of taxation. Some machinery must be provided for applying the rule to the facts in each taxpayer's case, in order to ascertain the amount due. The chosen instrumentality for the purpose is an administrative agency whose action is called an assessment. The assessment may be a valuation of property subject to taxation which valuation is to be multiplied by the statutory rule to ascertain the amount of tax. Or it may include the calculation and fix the amount of tax payable, and assessments of federal estate and income taxes are of this type. Once the tax is assessed the taxpayer will owe the sovereign the amount when the date fixed by law for payment arrives. Default in meeting the obligation calls for some procedure whereby payment can be enforced. The statute might remit the Government to an action at law wherein the taxpayer could offer such defense as he had. A judgment against him might be collected by the levy of an execution. But taxes are the life-blood of government, and their prompt and certain availability an imperious need. Time out of mind, therefore, the sovereign has resorted to more drastic means of collection. The assessment is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt.

" 'In recognition of the fact that erroneous determinations and assessments will inevitably occur, the statutes, in a spirit of fairness, invariably afford the taxpayer an opportunity at some stage to have mistakes rectified. Often an administrative hearing is afforded before the assessment becomes final; or administrative machinery is provided whereby an erroneous collection may be refunded; in some instances both administrative relief and redress by an action against the sovereign in one of its courts are permitted methods of restitution of excessive or illegal exaction. Thus the usual procedure for

the recovery of debts is reversed in the field of taxation. Payment precedes defense, and the burden of proof, normally on the claimant, is shifted to the taxpayer. The assessment supersedes the pleading, proof and judgment necessary in an action at law, and has the force of such a judgment. The ordinary defendant stands in judgment only after a hearing. The taxpayer often is afforded his hearing after judgment and after payment, and his only redress for unjust administrative action is the right to claim restitution.'

''The courts of this state have given full recognition to the foregoing precepts. From a discussion of the question of sufficiency of notice in a street improvement condemnation proceeding appearing in the opinion in the case of *Wulzen* v. *Board of Supervisors, supra,* at pages 18–20, we quote the following:

'' 'Justice Bradley, in discussing what is due process of law in *Davidson* v. *New Orleans,* 96 U. S. 97 [24 L. Ed. 616], uses the following language:

'' ' ''In judging what is due process of law, respect must be had to the cause and object of the taking, whether under the taxing power, the power of eminent domain, or the power of assessment for local improvements, or none of these, and if found to be suitable or admissible in the special case, it will be adjudged to be due process of law; but, if found to be arbitrary, oppressive and unjust, it may be declared to be not due process of law.''

'' 'In commenting upon the above quotation in *Lent* v. *Tillson,* 72 Cal. 404, 414 [14 Pac. 71], Temple, J., says: ''In other words, the sufficiency of the notice must be determined in each case from the particular circumstances of the case in hand. And further, in matters of assessment and taxation, the same character of notice is not required as in ordinary actions in a court of justice, for the reason, I presume, that in such summary proceedings it is not practicable or usual.''

'' 'The power of taxation is confined to the legislative department of the government and ''an act for levying taxes and providing the means of enforcement is within the unquestioned and unquestionable power of the legislature. It is, therefore, the law of the land not merely in so far as it lays down a general rule to be observed, but in all the proceedings and all the process which it points out or provides for in

order to give the rule full operation." (Cooley on Taxation, pp. 48, 49.) It was said in *Kelly* v. *Pittsburgh*, 104 U. S. 78, 80 [26 L. Ed. 658]: "Taxes have not, as a general rule, in this country since its independence, nor in England before that time, been collected by regular judicial proceedings. The necessities of government, the nature of the duty to be performed, and the customary usages of the people, have established a different procedure, which, in regard to that matter, is and always has been *due process of law.*" ' The court concluded: 'In matters of taxation and assessment the state is not bound to accord personal service of process upon the citizen.'

"In *People* v. *Central Pac. R. R. Co.*, 105 Cal. 576 [38 Pac. 905], the question was whether provisions for taxation of a distinct class of railroads was special legislation. It was said at pages 588–589: 'The collection of taxes is not, however, the mere collection of a debt, but is a sovereign act of the state to be exercised as may be prescribed by the legislature. Whether the tax is collected by an action in court, or by summary sale by the tax-collector, is immaterial. The state through its legislature can avail itself of the judicial power as the means by which it will collect the tax, and in such proceedings it may prescribe such procedure as may best avail for that purpose, irrespective of the mode of procedure provided for the determination of controversies between individuals, just as it may avail itself of the executive branch of the government by authorizing the sheriff to sell the property upon which the taxes are delinquent, without requiring him to pursue the same course as is required in sales upon judgments between individuals. Although the tax is an obligation from the citizen to the state, it is not of the same character of obligations as exists between citizens, and for the purposes of its collection the state is not limited to the same mode or to the same procedure which it prescribes for individuals in the collection of obligations between themselves.'

"The contention was made in *Merchants' Trust Co.* v. *Wright*, 161 Cal. 149 [118 Pac. 517], that the sale of an entire tract of land to satisfy a tax lien, when sale of a smaller portion would produce sufficient, was a deprivation of property without due process of law. The court said: 'That the legislature may provide for the present system of taxation under which the state acquires title to the property

of one who permits the taxes thereon to become delinquent and may authorize a subsequent sale thereof is not open to question. While it is undoubtedly true that a delinquent owner cannot be deprived of his property under such proceedings without due process of law, this due process of law as far as tax proceedings are concerned means only that due notice of sale shall be given to the delinquent owner and this is fully accorded him by sections 3764–3767 of the Political Code, which provide for a notice to him by publication of the sale to the state. This is all the notice he is constitutionally entitled to and when this is provided for by law, as it is here, he has been accorded the full measure of his constitutional right in that respect,' (citing cases).

"We also note the case of *East Tennessee Brewing Co.* v. *Currier,* 126 Tenn. 535 [150 S. W. 541], where the plaintiff, in addition to its brewer's manufacturing license tax, became liable for a liquor dealer's tax. A warrant issued to distrain sufficient property to satisfy taxes of $9,909, interest and penalties. The tax was paid under protest and suit was brought to enjoin further proceedings and to recover the tax paid. It was contended that the distraint, issued without notice or demand, was illegal and in violation of the rule of due process. The statute provided what facts would constitute a *prima facie* showing of liability for the tax and placed the burden on the dealer to prove that he was not engaged as such liquor dealer. There was no question that the brewer was in fact engaged in dealer's activities. It was held that under the authorities he was not entitled to advance notice that the tax was due; that if he was engaged in the wholesale or retail liquor business, he, of course, knew it, and was charged with notice that he was liable for the license tax exacted by the state. The court relied on *Hagar* v. *Reclamation District,* 111 U. S. 701, 709, 710 [4 Sup. Ct. 663, 28 L. Ed. 569], to the effect that from the nature of a vast number of different kinds of taxation as poll or license taxes, or taxes on things, persons, or occupations, notice to the taxpayer would be of no particular advantage and was, therefore, unnecessary. It quoted the following from 37 Cyc., p. 1233. 'Laws providing summary remedies for the collection of delinquent taxes are not open to the constitutional objection, because they dispense with some of the formalities of ordinary judicial procedure, or cut off technical defenses,

or authorize the seizure of the property first and the hearing afterward, provided only that the taxpayer is given an opportunity at some stage of the proceedings, and before his rights are finally cut off, to contest the validity of the tax or his liability in respect thereto.' Continuing, it said: 'The question of summary remedies for the collection of taxes is also discussed at length by Judge Cooley, in Cooley on Taxation, Vol. 2, pp. 827–830, and the question of due process and the law of the land are discussed in the same work, in volume 1, p. 51, et seq.

" 'From all the authorities, it is evident that the state has the power to assess taxes and fix methods for the collection thereof, and it does not matter if these remedies be summary in their nature, so long as the taxpayer is in some way, at some stage of the proceedings, given an opportunity to be heard and have his rights determined before some competent tribunal.

" 'The statute is this case directed the issuance of a distress warrant upon certain conditions made to appear to the clerk of the county court.

" 'The statute might have prescribed that notice be given to the delinquent taxpayer before the issuance of a warrant; but the legislature did not see proper to include such a provision, and it was entirely within their power to omit it, inasmuch as the taxpayer has open to him the several methods, heretofore pointed out, of calling in question the validity of the demand made against him.'

■ "Unquestionably the 'first section of the fourteenth amendment places a limit upon all the powers of the state, including, among others, that of taxation.' (*County of Santa Clara* v. *Southern Pacific R. Co.*, 18 Fed. 385, 397.) But the limit in respect to the levy and collection of taxes is well exemplified by the authorities herein discussed. The conclusion to be drawn therefrom is that the provisions of section 26 of the Retail Sales Tax Act do not contravene the constitutional inhibitions upon the legislature. The retailer knows or should know the amount of tax due on the sales reported by him. The statute provides for adequate notice of any additional assessment and an opportunity for mistakes to be rectified upon the filing of a petition within the time prescribed. He is notified by the provisions of the statute that the tax will become delinquent and collectible summarily

and without further notice unless he makes objection within the specified time. Nothing further is necessary in so far as the objections raised by the defendant are concerned. No contrary significance may be inferred from the provision that a 'judgment' is to be entered against the retailer upon the filing of the board's certificate, or that the lien created thereby 'shall have the force, effect and priority of a judgment lien.' The fact that the word 'judgment' was used to designate the method of the summary procedure does not of itself require all the antecedent steps in a judicial tribunal usually applicable when private debts are the subject of collection. The foregoing authorities are clear to the effect that the sovereign may adopt any appropriate procedure known to the law for the purpose of collecting taxes and that it is not required to provide for a hearing in a judicial tribunal before it may use the processes which follow upon the entry of a judgment in such tribunal. It is plain that a hearing in a judicial tribunal was not intended and is not required by the statute here in question. The use of the word 'judgment' in tax collection provisions for the purpose of calling in operation summary execution on and sale of property subject to tax liens is not strange nor unfamiliar. Section 3716 of the Political Code before its repeal in 1939 provided that 'every tax has the effect of a judgment against the person, and every lien created by this title has the force and effect of an execution duly levied against all the property of the delinquent; the judgment is not satisfied nor the lien removed until the taxes are paid or the property sold for the payment thereof.' (See *California Loan etc. Co.* v. *Weis,* 118 Cal. 489 [50 Pac. 697] ; see also *State of California* v. *Hisey,* 84 Fed. (2d) 802; *Bull* v. *United States, supra; Simpson* v. *Warren,* 106 Fla. 688 [143 So. 602, 144 So. 324] ; *State Revenue Com.* v. *National Biscuit Co.,* 49 Ga. App. 409 [175 S. E. 607] ; *In re State Tax Commission,* 136 Misc. 104 [240 N. Y. Supp. 309].)

"Such a 'judgment', not being ordered by a judicial tribunal, is not governed by provisions of the Code of Civil Procedure in like matters, such as the requirement for notice of entry of judgment, with the right to resort to an appellate tribunal.

█ "The foregoing also leads to the conclusion that the provisions of section 26 do not vest in the Board of Equalization arbitrary or unreasonable powers, and do not constitute

special legislation. As indicated, the legislature may employ such procedure without providing for a judgment ordered by a judicial tribunal. The law is general, applicable to all in the class specified, viz., persons engaged in retail sales of tangible personal property. No serious question is or may be raised that that class of taxpayers may not be subjected to the method of tax collection provided by the statute, if otherwise its provisions are in accord with the requirements of due process. (*Roth Drug Co., Inc.,* v. *Johnson,* 13 Cal. App. (2d) 720 [57 Pac. (2d) 1022]; see also *People* v. *Mahoney,* 13 Cal. (2d) 729 [91 Pac. (2d) 1029].)

"Cases relied upon by the defendant do not require or justify a contrary conclusion. *State* v. *Security National Bank,* 143 Minn. 408, 173 N. W. 885, involved a judicial proceeding wherein a judgment was reversed which was entered without notice or hearing against certain bank stockholders for a proportion of a tax assessed in the name of the bank. The court there, however, recognized that personal service of notice is not considered essential to due process in respect to the assessment and levy of taxes. As we have noted, the provisions of the Retail Sales Tax Act here in question relate solely to the assessment and collection of taxes and not to any proceeding in a judicial tribunal. The case of *Griffin* v. *Cook County,* 369 Ill. 380 [16 N. E. (2d) 906, 118 A. L. R. 1157], involved a statute which provided for a court proceeding to confirm a certain tax levy, and an appeal to the Supreme Court. It was held that the substituted service of notice by publication only in such judicial proceeding was not a compliance with due process of law. That case likewise is inapplicable to the facts involved here.

"The case of *Johnson* v. *Diefendorf,* 56 Ida. 620 [57 Pac. (2d) 1068], involved the Idaho sales tax law. That law contained provisions with respect to the filing of a notice of lien which should have the force and effect of a judgment duly docketed against the retailer. Section 17 of that act provided that if fraud or evasion on the part of a retailer be discovered by the commissioner, he should determine the amount by which the state has been defrauded, add to the amount so determined a penalty equal to twenty-five per cent thereof, and assess the same against the retailer, the amount so assessed to become immediately due and payable. Notice to delinquents and notice of sale were provided for, but ap-

parently without any opportunity to make any objection to the finality of any additional assessment except by way of payment of the tax under protest and suit for recovery thereof. It was held that the arbitrary processes authorized by section 17, among others, were a deprivation of due process. It was also held that the powers sought to be conferred belong to the judicial branch of the government and could not be conferred upon the department of finance nor its commissioner. The court relied on the provisions of its state Constitution, and authorities stating the rule that 'due process of law requires that one be heard before his rights are adjudged.' It is questionable whether the court there would have come to any different conclusion had the act and particularly section 17 thereof provided for notice and an opportunity to object to the amount or validity of the tax before the finality of the assessment therein provided; but in any event the absence of any such provision in section 17 of the statute there involved distinguishes that case from the present. Aside from that distinction, if the decision be deemed to be support for the defendant's contentions herein, we must conclude that it is not in accord with the weight of authority.

"The foregoing disposes of all the contentions presented by the defendant."

The judgment is reversed.

Gibson, C. J., Carter, J., and Spence, J., *pro tem.*, concurred.

Traynor, J., took no part in the consideration or decision of this case.

EDMONDS, J., Dissenting.—In my opinion, the decision of the majority authorizes a procedure which ignores constitutional rights, and is directly at variance with the fundamental principles of our government. The question for decision, it seems to me, is not answered by reference to the well established rule that the sovereign may provide a summary method for the collection of taxes.

I fully recognize that the maintenance of government is dependent upon the prompt collection of revenue for public purposes. But the provision of the Retail Sales Tax Act (Stats. 1933, p. 2599, as amended; Deering's Gen. Laws, 1937

Ed., Act 8493), which is upheld in this case permits an administrative body to usurp the functions of the superior court in violation of the constitutional provision: ''The powers of the government of the State of California shall be divided into three separate departments—the legislative, executive, and judicial; and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others, except as in this Constitution expressly directed or permitted.'' (Art. III, sec. 1, Const.) It is, of course, true that although there are different departments of our government and each must act within its own prescribed limitations, executive agencies and judicial tribunals may cooperate for the accomplishment of governmental purposes. However, the constitutional provision contemplates independent action. To require the superior court to enter a judgment against an individual upon the mere demand of an administrative agency, in effect, subjects the judicial department of government to the other branches which are coordinate with but not superior to it.

According to section 26 of the Retail Sales Tax Act, *supra,* the clerk of the superior court, immediately upon the filing of a certificate made by the State Board of Equalization ''shall enter a judgment for the people of the State of California against the retailer.'' ''Execution shall issue upon such a judgment upon request of the board in the same manner as execution may issue upon other judgments and sales shall be held under such execution as prescribed in the Code of Civil Procedure.'' Under these provisions a judgment *in personam* is entered against the retailer without any compliance with judicial procedure.

This is not a determination which, under section 3716 of the Political Code has the ''effect'' of a judgment. ''A judgment is the final determination of the rights of the parties in an action or proceeding.'' (Sec. 577, Code Civ. Proc.) But a determination of liability which is given the ''effect'' of a judgment is an obligation collectible by administrative proceedings. And although by section 3716 of the Political Code, tax liens are given the ''force and effect'' of an execution, the execution to be issued upon the judgment provided for in section 26 is the same kind of execution as is issued ''upon other judgments.''

In my opinion, therefore, the contention that the proceedings authorized by section 26 of the Retail Sales Tax Act are purely administrative may not be sustained. "The state through its legislature can avail itself of the judicial power as the means by which it will collect the tax," and for that purpose may prescribe procedure summary and different than is provided for the determination of controversies between individuals. (*People* v. *Central Pacific R. R. Co.*, 105 Cal. 576 [38 Pac. 905].) But where at the instigation of the state the courts are called upon to aid another department of the government and to add judicial action to administrative order, the indispensable prerequisites of judicial action must exist. Notice by an administrative board of a hearing to be held by it is not a substitute for the due process which must underlie judicial action.

Not one of the cases relied upon by my associates concerned procedure similar to that which is here challenged. In accordance with long established principles they hold that summary methods of an administrative body in the levy, assessment and collection of taxes do not violate due process of law if, somewhere in the administrative proceeding, the taxpayer had notice and an opportunity to be heard. However, these cases are not authority for the enforcement of an administrative determination as the judgment of a court of law.

For example, in *Springer* v. *United States*, 102 U. S. 586 [26 L. Ed. 253], the tax collector caused a warrant to issue and levied upon real estate. It was urged that the summary levy and sale deprived the taxpayer of property without due process of law. The court held that this administrative process did not violate the constitutional guarantees. In the case of *Bull* v. *United States*, 295 U. S. 247 [55 Sup. Ct. 695, 79 L. Ed. 1421], the court held that administrative procedure of a summary nature is valid, yet its opinion indicates that there is a clear line of demarcation between the administrative and judicial process in the collection of taxes. In this connection it is said that if the amount assessed by the taxing authorities is not paid when due, "administrative officials may seize the debtor's property to satisfy the debt."

So also in *People* v. *Central Pacific R. R. Co., supra,* an administrative procedure to assess and collect taxes upon railroads was upheld, but the decision is not authority for the conclusion reached in the present case. The court said: "The

collection of taxes is not, however, the mere collection of a debt, but is a sovereign act of the state to be exercised as may be prescribed by the legislature. Whether the tax is collected by an action in court, or by summary sale by the tax-collector, is immaterial.'' In other words, the court in that case clearly recognized the distinction between an administrative remedy and judicial process. For, as my associates have pointed out, a statute may require the government to proceed by an action at law or it may authorize the summary seizure of property by the administrative officers. The government may choose its remedy but if it proceeds by way of judicial authority, it must follow the due process required in actions at law.

Curtis, J., concurred.

Respondent's petition for a rehearing was denied August 25, 1941. Curtis, J., Edmonds, J., and Houser, J., voted for a rehearing.