**UNITED STATES of America,**
**Plaintiff,**

v.

**360 ACRES OF LAND IN COUNTY OF KERN, STATE OF CALIFORNIA,**
**E. S. McKendry, et al., Defendants.**

**No. 1253.**

United States District Court
S. D. California, N. D.

June 25, 1959.

Laughlin E. Waters, U. S. Atty., Edward R. McHale, Lillian W. Stanley,

Asst. U. S. Attys., Los Angeles, Cal., for plaintiff.

Florence Lowé Barnes, in pro. per.

Stanley Mosk, Atty. Gen., James E. Sabine, Asst. Atty. Gen., Dan Kaufmann, Joe J. Yasaki, Deputy Attys. Gen., for defendant State of California.

HALL, District Judge.

This condemnation action was commenced February 27, 1953. Four hundred fourteen thousand and twenty-five dollars ($414,025) was deposited in the Registry of the Court during the course of the proceedings.

In 1955 the District Director of Internal Revenue for the United States filed a petition under 40 U.S.C.A. § 258a to withdraw from the funds on deposit unpaid internal revenue taxes claimed to be owing by Florence Lowe Barnes, also known as Mrs. E. S. McKendry, also known as Pancho Barnes, claiming a lawful lien for 1940 additional income taxes in the sum of $2,712.72, the third quarter 1953 withholding and employment taxes in the sum of $6.09 and the fourth quarter 1953 withholding and employment taxes in the sum of $8.31, totaling $2,727.12, together with interest on the unpaid taxes of various amounts commencing at certain periods.

At about the same time the Franchise Tax Board of the State of California filed a similar petition under 40 U.S.C.A., § 258a, asserting a lien for unpaid income taxes for the year 1940 and for the years 1946, 1947 and 1948, which was later amended so that the total tax claimed to be due was $1,045.86, together with interest thereon commencing at certain periods.

Both of these petitions were heard by Judge Jertberg, now Judge of the United States Court of Appeals, on September 26, 1955, sitting without a jury.

On October 18, 1955 he made a judgment and order segregating $4,753.14 of the amount claimed by the United States with interest as unpaid income taxes of said Barnes for the year 1940, and he also made a similar order on October

21, 1955, segregating $1,211.06 of the amount claimed with interest as unpaid income taxes of said Barnes for the years 1940, 1946, 1947 and 1948 as to the Franchise Tax Board of the State of California.

Said order on the petition of the District Director of Internal Revenue provided in part as follows:

"It Is Hereby Ordered, Adjudged and Decreed that the United States of America has a valid existing tax lien for *income taxes for the year 1940 against* said respondent, Frances Lowe Barnes, in the sum of $4,313.14, as of September 26, 1955, together with interest thereafter until paid, and that said respondent has an interest in the property subject of this action and in the fund held in the registry of this Court of a nature and extent not yet determined by this Court;

It Is Further Ordered, Adjudged and Decreed that of the sum now held in the registry of the Court and any further sums which may be paid into the registry of the Court by the plaintiff in connection with this action or any and all tracts concerned in this action, a sum sufficient to pay said lien of the United States in the amount of $4,313.14 together with interest (which accrues at the rate of six per centum per annum or $.44 per day from September 26, 1955 until paid) for a period of 1000 days, to wit, a total of $4,753.14, shall be retained by the Clerk in the registry of the Court and not paid to any defendant herein pending a final determination by the Court of the respective rights of the United States under its tax lien and of the respondent and defendants in and to the fund;"

Identical provisions were contained in the order of segregation on the petition of the State of California except for the difference as to the amounts and years (1940, 1946, 1947 and 1948).

Thereafter, and on November 13, 1956, after trial by jury, judgment was entered

fixing just compensation in the sum of $377,500 and adjudicating that the parties entitled thereto were Florence Lowe Barnes McKendry, also known as Pancho Barnes, E. S. McKendry, and William Emmert Barnes, without fixing the proportion to which each was entitled.

Distribution has been made under the judgment of all sums except the amounts segregated by the above-mentioned orders of October 18, 1955 and October 21, 1955.

In April, 1959, both the Director of the United States Internal Revenue Service and the State of California filed new motions for the payment of the money segregated by the two above-mentioned orders. The motions were made under that provision of 40 U.S.C.A. § 258a reading as follows:

"The court shall have power to make *such* orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable."

The matter came on before the undersigned for hearing and was heard and tried by the undersigned sitting without a jury on May 19, 1959.

Both the United States and the State of California took the position: (a) that each of the segregation orders abovementioned had adjudicated not only the validity of each lien but also the merits of their claims for taxes for the years involved, i. e., defendant Pancho Barnes had income in 1940 upon which income taxes were due the United States in the amount claimed, and that she had income for the years 1940, 1946, 1947 and 1948 upon which income taxes were due the State of California in the amount claimed, and that the court now has no power to do anything but direct payment of the money to the United States Government and the State of California, respectively. (b) that, should the court hold against the United States and the State of California on contention (a), then the court must direct that the sums be paid to each respectively, and that Barnes be relegated to the remedies provided by the

applicable Federal and California State laws permitting litigation on the merits in connection with a claim for refund.

No evidence was offered by either the United States or the State of California on the merits, i. e., to show what taxable income, if any, the defendant Pancho Barnes had in the years in question.

■ Both the United States and the Franchise Tax Board are in error in taking the position that the orders of October 18, 1955 and October 21, 1955, adjudicated the merits of their claims for taxes. Each order merely adjudicated the validity of the lien, that is to say, that the required lawful steps had been taken to create a lawful lien. This is made clear by that portion of the order above quoted, reading as follows: —[the money] "shall be retained by the clerk in the registry of this court, and not paid to any defendant herein, *pending a final determination by this court of the rights of said respondent and defendant in and to the fund*".

There then arises the alternate contention of the United States and the State of California, hereinbefore stated as (b) that the court must direct that the sums be paid to each respectively and that Barnes be relegated to the remedies provided by the applicable Federal and California State laws permitting litigation on the merits in connection with a claim for refund.

This brings into consideration the extent of the grant of jurisdiction to this court in this proceeding contained in 40 U.S.C.A. § 258a above quoted, viz., *"The court shall have power to make such orders in respect of * * * taxes * * * as shall be just and equitable."* Counsel have cited no case, and none has been found on independent research which squarely deals with the precise question involved here.

Without doubt, the taxpayer (Barnes) is constitutionally entitled to a day in court in an adversary proceeding before a lawfully constituted tribunal on the merits of whether or not the assessments of income taxes and ensuing liens were

founded on the basis of fact of income or were mere arbitrary fiats.

Both the United States (1939 U. S. Internal Revenue Code Chapter 37, 26 U.S.C.A. § 3770 et seq.) and the State of California (California Revenue and Taxation Code Sections 17001–19500) set up procedures for administratively determining, and thereafter litigating in court, if the taxpayer so desires, the merits of the tax after the tax has been paid by the taxpayer when a valid lien has been imposed.

The Government and the State contend that these procedures are exclusive and that no grant of power is given by 40 U.S.C.A. § 258a to determine the merits of the tax under that section, which has ripened into a lien prior to the date of taking of the land by condemnation, as is the case here.

The language of 40 U.S.C.A. § 258a is as broad as any grant of jurisdiction contained in the Federal Statutes. It comprehends the power to make such orders as will be "just and equitable." That language, while broad in terms of a grant of jurisdiction, also confers the power and implies the duty that the court shall use discretion in its exercise, that is to say, in an appropriate case (and this is one) the court *can* exercise the power to adjudicate the merits of a tax claim underlying the liens, but it is implicit in the grant of jurisdiction that the court may determine in the exercise of sound judicial discretion whether or not it *should* exercise that power.

In this connection, consideration must be given to the ideas underlying the assessment, levy and collection of the taxes by the State and Federal governments, best expressed in the California case of People v. Skinner, 1941, 18 Cal.2d 349, 115 P.2d 448, 492, 149 A.L.R. 299, where the court *quoted* with approval, from Bull v. United States, 1935, 295 U.S. 247, at pages 259–260, 55 S.Ct. 695, at pages 699, 700, 79 L.Ed. 1421, as follows:

" ' "A tax is an exaction by the sovereign, and necessarily the sovereign has an enforcible claim against every one within the taxable class for the amount lawfully due from him. The statute prescribes the rule of taxation. Some machinery must be provided for applying the rule to the facts in each taxpayer's case, in order to ascertain the amount due. The chosen instrumentality for the purpose is an administrative agency whose action is called an assessment. The assessment may be a valuation of property subject to taxation, which valuation is to be multiplied by the statutory rate to ascertain the amount of tax. Or it may include the calculation and fix the amount of tax payable, and assessments of federal estate and income taxes are of this type. Once the tax is assessed the taxpayer will owe the sovereign the amount when the date fixed by law for payment arrives. Default in meeting the obligation calls for some procedure whereby payment can be enforced. The statute might remit the government to an action at law wherein the taxpayer could offer such defense as he had. A judgment against him might be collected by the levy of an execution. But taxes are the lifeblood of government, and their prompt and certain availability an imperious need. Time out of mind, therefore, the sovereign has resorted to more drastic means of collection. The assessment is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt.

" ' "In recognition of the fact that erroneous determinations and assessments will inevitably occur, the statutes, in a spirit of fairness, invariably afford the taxpayer an opportunity at some stage to have mistakes rectified. Often an administrative hearing is afforded before the assessment becomes final; or administrative machinery is provided whereby an erroneous collection may be refunded; in some

instances both administrative relief and redress by an action against the sovereign in one of its courts are permitted methods of restitution of excessive or illegal exaction. Thus the usual procedure for the recovery of debts is reversed in the field of taxation. Payment precedes defense, and the burden or proof, normally on the claimant, is shifted to the taxpayer. The assessment supersedes the pleading, proof, and judgment necessary in an action at law, and has the force of such a judgment. The ordinary defendant stands in judgment only after a hearing. The taxpayer often is afforded his hearing after judgment and after payment, and his only redress for unjust administrative action is the right to claim restitution." ' "

In being "just and equitable," the court must be as just and equitable to the government as to the taxpayer.

The alleged income taxes involved concern the year 1940 as to the United States, and according to the record, notice of claim therefor and of the existence of the lien was given to the taxpayer in 1945—fourteen years ago. The claim of the State of California for alleged income taxes also involves the year 1940 and arbitrary assessments for the years 1946, 1947 and 1948, notice of which was given to the taxpayer by the recordation of the claim of lien in the county where the property subject to the condemnation proceeding was located, at various times. The taxpayer, thus having notice of the claims of both the United States and the State of California, has done nothing either to contest the validity of the underlying taxes either by a payment or claim for refund, or otherwise.

An alternative procedure to the payment of the money to the Government and to the State of California is to direct payment of the money direct to the taxpayer and compel both the United States and the State of California to sue in the event the court does not exercise its discretion to determine the underlying merits of the claim for taxes. Such action would, however, invalidate the liens, which have been adjudicated to be valid and which is now the law of the case.

 In view of these facts and of the precepts set forth in the foregoing quotation from Bull v. United States, coupled with the provisions of the Internal Revenue Code and the California Revenue and Taxation Code, permitting litigation, after payment, on a claim for refund, show that in the exercise of sound discretion it will be "just and equitable" to the United States Government and to the State of California by ordering the segregated monies paid to the United States and to the State of California respectively, and would also be "just and equitable" to the taxpayer Barnes who will have available to her full rights to litigate the merits of the assessed tax on, or following, proceedings for claim for refund, both under United States laws and the California Code. Thus, the valid liens of the United States and the State of California will be protected and thus the taxpayer will have her constitutional day in court, if she desires it.

Nothing herein contained is intended to indicate any view of this court whether or not the taxpayer does or does not owe the taxes.

It is, therefore, hereby ordered, adjudged and decreed that the sum of $4,753.14, segregated under the order of this court of October 18, 1955, be forthwith paid to the District Director of Internal Revenue of the United States at Los Angeles, subject to all the statutory rights of said taxpayer Barnes to claim refund and litigate administratively, or in a court having competent jurisdiction thereof, the merits of the claim of the United States against said Barnes for said income taxes; and

It is further ordered, adjudged and decreed that the sum of $1,211.06 segregated under the order of this court of October 21, 1955, be forthwith paid to the Franchise Tax Board of the State of California, subject to all statutory rights of said taxpayer Barnes to claim refund and litigate administratively, or in a

court having competent jurisdiction thereof, the merits of the claim of the State of California against said taxpayer Barnes for the income taxes claimed to be due the State of California.

The foregoing will serve as findings of fact, conclusions of law and judgment under Federal Rules of Civil Procedure, rule 52, 28 U.S.C.A.